**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Zac A. CRITTENDEN, Jr., d/b/a
Crittenden Tractor Company,
Defendant-Appellee.**

No. 75–4174.

United States Court of Appeals,
Fifth Circuit.

Nov. 21, 1977.

Rehearing and Rehearing En Banc
Denied Feb. 6, 1978.

Ronald T. Knight, U. S. Atty., H. Palmer Carr, Jr., Asst. U. S. Atty., Macon, Ga., Ted L. Elders, Atty., Atlanta, Ga., Margaret M. Breinholt, Atty., Dept. of Agriculture, Washington, D. C., for plaintiff-appellant.

A'Delbert Bowen, Cuthbert, Ga., Albert W. Stubbs, Columbus, Ga., Howell Hollis, III, Atlanta, Ga., for defendant-appellee.

Before GOLDBERG and TJOFLAT, Circuit Judges, and WYATT *, District Judge.

GOLDBERG, Circuit Judge:

Today we examine the lineage of liens to determine their hierarchy. At issue is the relative priority of the Farmers Home Administration's (FHA) perfected security interest in a tractor and Zac A. Crittenden, Jr.'s mechanic's lien against the same tractor. The case presents a number of distinct issues, ranging from mundane commercial questions to intricate matters of federal common law. Specifically, we must decide (1) whether FHA's security interest was adequately perfected and whether this determination is governed by federal or state law; (2) whether the relative priority of the competing interests in the tractor at issue shall be determined under federal or state law; (3) if federal law applies, whether the applicable federal rule is the first in time, first in right rule, a federal common law rule guided by Uniform Commercial Code (U.C.C.) principles, or a federally incorporated state commercial law rule; and finally, (4) under the applicable rule, whether Crittenden's mechanic's lien is superior to FHA's security interest and if so, whether the lien's superiority extends to the tractor's entire repair bill or is limited to that portion of the bill representing repairs made during Crittenden's last and continuing possession of the tractor.

The district court sustained Crittenden's motion for summary judgment on the independent grounds that FHA had failed to perfect its security interest, that Crittenden's mechanic's lien had priority over the security interest under both federal and Georgia law, and that Crittenden was entitled to assert an equitable lien on the property superior to FHA's security interest. We hold (1) that the issue of the perfection of FHA's security interest must be decided with reference to federal law and that the government's security interest was adequately perfected; (2) that federal law governs the priority determination; (3) that the applicable federal standard is a federal commercial law rule guided by U.C.C. principles; and (4) that under this rule, Crittenden's mechanic's lien is superior to FHA's perfected security interest, but only to the extent of repairs made during his last and continuing possession of the tractor.[1]

---

* Senior United States District Judge, Southern District of New York, sitting by designation.

1. Crittenden also asserts an equitable lien on the tractor superior to FHA's security interest. In light of our resolution of the mechanic's lien issue, it is unnecessary to decide this question. Our reasons for limiting mechanic's lien superiority to repairs made during Crittenden's last possession of the tractor also are applicable in the equitable lien context. Thus even if an equitable lien did exist, its superiority to FHA's security interest would be identical to that of the mechanic's lien.

## I.

Disputes over the priority of liens inevitably arise when a borrower is unable to pay his debts as they become due and lacks sufficient collateral to satisfy his creditors. Here the impecunious one was Ralph B. Bridges of Terrell County, Georgia. From 1970 to 1972 Bridges, in need of operating capital for his farm, obtained several loans pursuant to the Consolidated Farmers Home Administration Act of 1961, 7 U.S.C. § 1921 *et seq.*,[2] from FHA, an agency of the United States Department of Agriculture. On February 2, 1972 Bridges executed a security agreement granting FHA a security interest in his crops and certain farm equipment, including an Allis Chalmers diesel 21 tractor. A financing statement, consisting of a standard FHA form,[3] was filed in the offices of the Clerks of Superior Court for Terrell County and for Randolph County on February 2, 1972.

On December 29, 1972 Bridges first took his Allis Chalmers tractor to Crittenden's place of business in Shellman, Georgia (Randolph County) for repairs. Between that date and December 21, 1973, Bridges brought his tractor to Crittenden for repairs some six times, accumulating an unpaid repair bill of $1607.47. On December 21, 1973 Bridges again took his tractor to Crittenden for repairs. The bill came to $543.81, raising the total outstanding debt to $2151.28. Because Bridges was unable to pay this bill, Crittenden retained possession of the tractor. On February 4, 1974, Bridges filed a petition in bankruptcy with the United States District Court, and on March 14, 1974 Crittenden successfully levied on the tractor[4] and was allowed to remain in possession as bailee.

Subsequent to Bridges' discharge in bankruptcy on September 26, 1974, the unpaid balance on the loans due FHA was $7,251.22, and the tractor was valued at $5,000. After Crittenden refused to turn over the tractor to FHA, the United States, plaintiff-appellant, filed this suit against Zac Crittenden, defendant-appellee, to obtain possession of the tractor. The district court granted defendant's motion for summary judgment and plaintiff now appeals.

## II. The Financing Statement

The relevant pre-printed portion of the financing statement states:

1. This financing statement covers the following types or items of collateral, including proceeds and products thereof:

   (a) Crops, livestock, supplies, other farm products, farm equipment and inventory.

   (b)‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

The appellee maintains that FHA does not have a perfected security interest in the tractor because the tractor was not sufficiently described in the financing statement to meet the requirements for perfection under Georgia law. We disagree with appellee and the district court and hold that federal law rather than state law governs the determination of the sufficiency of a financing statement filed by FHA. We further hold that in this case the description found in the financing statement was sufficient to perfect a security interest in Bridges' tractor.

### A. Choice of Law

In *United States v. Hext*, 444 F.2d 804 (5th Cir. 1971) we joined the Third, Sixth, Ninth, and Tenth Circuits in holding that the rights and liabilities of the parties to a suit arising from FHA loan transactions must, under the rationale of the *Clear-*

---

**2.** The Act is now entitled the "Consolidated Farm and Rural Development Act," 7 U.S.C. § 1921 *et seq.*

**3.** Form FHA 440–25 (Rev. 5–25–66).

**4.** Based on Crittenden's affidavit, the Randolph County Superior Court clerk issued a fi. fa., a special Georgia writ of foreclosure, against the tractor and the county sheriff levied the fi. fa. on the tractor. Fortunately, we need not decide whether FHA could have attacked Crittenden's fi. fa. with a fo fum or whether the result would be different if Crittenden had English blood.

*field Trust* doctrine,[5] be determined with reference to federal law.[6] Just as a supremacy clause reigns in constitutional terms, in the choice of law context the doctrine of supremacy must obtain in lien law where the government is the lender. In *Hext,* FHA had perfected a security interest in the debtor's cotton crop. The debtor later sold the cotton to a cotton broker who the parties agreed was a bona fide purchaser in good faith with no actual knowledge of FHA's security interest. The debtor then went bankrupt. In a conversion suit brought by FHA against the broker and a warehouse company that stored the cotton, the district court held the defendants liable for the government's loss under state law. We reversed, holding that federal common law, to be fashioned according to general principles of commercial law, must govern the rights and liabilities of the United States in suits arising from FHA loan transactions.

While it is unnecessary to detail fully the reasoning of our decision in *Hext,* it is instructive to note that

> the principal reason supporting the application of federal law is the need for a uniform rule of decision to govern the rights of the United States in the administration of a large-scale program, of nation-wide scope such as the FHA farm loan program, rather than subjecting "federal rights and duties to the exceptional uncertainty and heterogeneity" which might result "if disparate laws of individual states were applied to substantially identical loan transactions."

444 F.2d at 808, *quoting United States v. Sommerville,* 324 F.2d 712, 716, 717 (3rd Cir. 1963) (footnote omitted). We also stressed

the undesirability of subjecting FHA to the possibility that the governing state law might be changed whenever the United States was successful in litigation. *Id.,* at 809.[7]

### B. Determining the Applicable Federal Rule

█ Having concluded that federal law must determine whether FHA's financing statement is adequate to perfect its security interest, we now must decide whether to fashion a uniform federal rule or to incorporate the relevant state law rule. *Hext* admonishes us that in general this court should be guided by principles set forth in the Uniform Commercial Code when fashioning the federal common law rule applicable to suits arising from FHA loan transactions. Because the applicable U.C.C. sections for determining the sufficiency of a financing statement have been adopted by the Georgia Legislature, Ga.Code Ann. §§ 109A–9–402, 109A–9–110, it might appear that the law governing this issue would be the same whether we adopted a uniform federal rule or incorporated state law. However, judicial interpretations of the U.C.C. rules do differ from state to state, and adoption of state law by incorporation consequently would lead to variant results depending on the applicable state law. On the other hand, adoption of a single federal rule would lead to uniform results in determining the sufficiency of FHA's financing statement regardless of the law in the state whose law would otherwise be applied. For the reasons discussed below, we conclude that the proper federal

---

**5.** *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

**6.** See *Cassidy Commission Co. v. United States,* 387 F.2d 875 (10th Cir. 1967); *United States v. Carson,* 372 F.2d 429 (6th Cir. 1967); *United States v. Sommerville,* 324 F.2d 712 (3rd Cir. 1963), *cert. denied,* 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); *United States v. Matthews,* 244 F.2d 626 (9th Cir. 1957). The Eighth and Fourth Circuits have held that state law controls. *See United States v. Union Livestock Sales Co.,* 298 F.2d 755 (4th Cir. 1962);

*United States v. Kramel,* 234 F.2d 577 (8th Cir. 1956).

**7.** After the district court ruled for the government in *Hext,* the Texas legislature amended the applicable state law. Tex.Rev.Civ.Stats. Ann. art. 5571 (Vernon Supp.1969) We noted on appeal that the new statute was contrary both to the general common law of conversion and to Uniform Commercial Code principles. If the *Hext* court had concluded that state law was applicable, subsequent FHA transactions would have been governed by that statute.

rule is a uniform common law rule based on U.C.C. sections 9–402 and 9–110.

The need for a uniform federal rule to govern the sufficiency determination is apparent from the facts of the instant case. The financing statement at issue consists of a pre-printed FHA form which lists the most common types of collateral used to secure FHA loans. FHA uses this form to secure loans throughout the country. As we shall see, the only issue with respect to these forms is whether the pre-printed description of the collateral is sufficient to put third parties on notice of possible security interests. As a factual matter, it is presumably the case that a standard form sufficiently descriptive to put a potential creditor in Texas on notice of a security interest in a tractor is also sufficient to put a creditor in Georgia or anywhere else on equal notice. Nonetheless, state courts might differ as to the specificity required to perfect a security interest in a tractor.

The federal interest in uniformity recognized in *Hext* is particularly compelling in this situation. Use of a single standardized financing statement greatly simplifies the administration of FHA's nationwide program. Furthermore, we have not discovered a single state court case in which the precise issue of whether the term "farm equipment" is sufficient to perfect a security interest in a tractor was decided. Because state law on this issue is at best uncertain and vague, FHA's ability to administer its loan program would be furthered greatly by a single and final determination, rather than the possibility of fifty-two separate determinations, of the issue.

The corresponding state interest in having its own law apply here is not great. Although the legal resolution of the sufficiency question might vary from state to state, the correct conclusion to the underlying factual question, whether the FHA financing statement gives sufficient notice to third parties of FHA's security interest in the tractor, should not vary. A single federal determination of this question is therefore sufficient to protect fully the state interest in adequate notice.[8]

## C. Application of the U.C.C. Rule

■ The requirements of a financing statement are spelled out in U.C.C. § 9–402. In pertinent part, that section states:

A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and *contains a statement indicating the types, or describing the items, of collateral.* (Emphasis Supplied)

Section 9–110 of the Code further provides:

For the purposes of this Article any description of personal property or real estate is sufficient whether or not it is specific *if it reasonably identifies* what is described. (Emphasis Supplied)

**8.** In *Hext, supra,* we stated in dictum that

Although . . . federal law must govern the ultimate questions of the duties and liabilities of the parties in the instant litigation, the *filing* requirements for perfection of a security interest must nevertheless be those in effect in the particular state where the collateral is located. *See United States v. Sommerville,* 324 F.2d 712, 717 (3rd Cir. 1963).

444 F.2d at 806 n.2 (emphasis supplied). We understand this statement to refer to the formal requirements for *filing* a financing statement, such as the proper place of filing, under U.C.C. §§ 9–401 to 9–403, and not to the sufficiency of the financing statement under U.C.C.

§ 9–402. *See United States v. Sommerville,* 324 F.2d 712 (3rd Cir. 1963). This statement is consistent with our approach here because the state does have a significant interest in ensuring that its place of filing, filing fee, signature, and address requirements are met. While this interest requires us to leave the wherefores and whereas's to the states, the whys must be left to the federal government for the reason that, at least in this case, the interest of the federal government in seeing that its liens have universal application outweighs the corresponding state interest in having its own law apply. The muniments to constitute a lien can be Georgia-based, but the effects of the muniments here are federally determined.

The official comment to U.C.C. § 9–402 explains that the Code has adopted a system of "notice filing." The filed notice is sufficient if it indicates that the secured party may have a security interest in the collateral described and that further inquiry by the interested party is warranted. The official comment to U.C.C. § 9–110 states that the Code does not contemplate exact and detailed descriptions. Merely indicating the *types* of collateral is sufficient. *See* J. Honnold, Law of Sales & Sales Financing 495 (University Casebook Series 1976). While some descriptions may be so broad that they are as unhelpful as no description at all, *see In re Fuqua*, 461 F.2d 1186 (10th Cir. 1972) (description "all personal property" too broad to perfect security interest in certain livestock, feed, and milking equipment), very broad descriptions generally are allowed if the description is sufficient to indicate to interested third parties the possible existence of prior encumbrances on the collateral. *See, e. g., In re Munger*, 495 F.2d 511 (9th Cir. 1974) ("all crops . . [and their] proceeds" sufficient to describe federal farm subsidy payments); *In re Turnage*, 493 F.2d 505 (5th Cir. 1974); *United States v. First National Bank*, 470 F.2d 944, (8th Cir. 1973).

In the instant case, we think that any reasonable third party who considered accepting as collateral the Allis Chalmers tractor would receive ample notice from FHA's financing statement that further inquiry was in order. The term "farm equipment" contained in the financing statement constitutes a sufficiently specific description of the tractor to perfect FHA's security interest.[9]

**9.** Appellee also argues that use of a pre-printed form with a printed statement describing the types of collateral at issue is both confusing and misleading because the only typewritten entry pertains to crops. We reject this contention. Our careful examination of the financing statement convinces us that a reasonable person reading the document would be neither confused nor mislead into believing that FHA's security interest was limited to crops.

## III. Priority of Competing Claims to the Tractor

### A. Choice of Law

■ It is evident from our discussion of the *Hext* case, *supra*, that federal law must govern the rights and liabilities of parties to disputes arising from FHA loan transactions. We are thus in agreement with the parties that federal law must determine the priority of the competing claims to Bridges' tractor in this case.

### B. The Appropriate Federal Rule

We are called upon here to referee a feud among the family of federalism over the priority of liens and must determine the pater familias recognizing that siblings have their say and that rules of primogeniture have no strict applicability. In this process we can freely adopt or adapt the decision to the exigencies of federal and state law in tandem, in controvention, and in cooperation. Determining the appropriate federal rule is a nettlesome problem, and while we should recognize and advance federal interests, we must be careful lest the federal government be meddlesome when it is not necessary and essential. The three candidates for the position are (1) the federal common law rule of "first in time, first in right," (2) a federal rule based on Uniform Commercial Code principles, and (3) a federal rule incorporating state law. To this central issue of the case, we now turn.

1. "First in time, first in right" is not always right.

■ FHA contends that its security interest is superior to Crittenden's mechanic's lien[10] because the mechanic's lien was in-

**10.** The term "mechanic's lien" is often used to refer to both the artisan-repairman's lien at issue here and the materialman—subcontractor's lien. These two types of mechanic's liens sometimes are treated quite differently under state and federal law; *compare* the following Federal Tax Lien Act provisions: 26 U.S.C. § 6323(b)(5) *with* § 6325(b)(7). Our use of the term "mechanic's lien" refers only to the so-called artisan or repairman's lien for improvements or repairs on personal property.

choate, that is, not specific and certain, at the time that FHA's security interest attached. The Supreme Court has held that under the rule of "first in time is the first in right" a federal tax lien is superior to all other liens not choate at the time the federal tax lien is filed.[11] *United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966); *United States v. Pioneer American Insurance Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). *See generally* Kennedy, *From Spokane County to Vermont: The Campaign of the Federal Government Against the Inchoate Lien*, 50 Iowa L.Rev. 724 (1965); Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien*, 63 Yale L.J. 905 (1954). Choateness is a doctrine of presagement. The natality of a lien can come subsequent to its conception, and the lien is inchoate while it is in the gestational stage. The first in time rule and the choateness doctrine are entirely court-made, *see* Plumb, *Federal Tax Liens and Priorities—Agenda for the Next Decade*, 77 Yale L.J. 228, 229–30 (1967), and

have been extended to give federally held mortgages priority over certain unrecorded liens that would have been superior under state law. *United States v. Roessling*, 280 F.2d 933 (5th Cir. 1960) (FHA mortgage lien superior to county tax lien). *See United States v. Oswald & Hess Co.*, 345 F.2d 886 (3rd Cir. 1965) (SBA mortgage lien).

The three Supreme Court cases which developed the first in time test in the federal tax lien context were all decided prior to the passage of the Federal Tax Lien Act of 1966. 26 U.S.C. § 6323. The Act was passed to mitigate the often harsh results of the much criticized first in time rule and choateness doctrine, *see* Kennedy, *supra*, 50 Iowa L.Rev. at 750–754; Plumb, *supra*, 77 Yale L.J. at 229–33, 285–96 (1967), and it substantially altered the common law priority rules for federal tax liens. We acknowledged Congress' disapproval of the choateness doctrine in *Connecticut Mutual Life Insurance Co. v. Carter*, 446 F.2d 136 (5th Cir.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971), which held that in light of the Tax Lien Act, the choateness doctrine would not be applied to determine the relative priority of a lien for attorney's fees contained in a first mortgage on farm

---

**11.** For a lien to be "choate" the identity of the lienor and the property subject to the lien, and the amount of the lien, must be specific, certain, and complete. This usually requires either that the lien has been reduced to a judgment or that the lien is enforceable by summary proceedings. *See United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). Specification of the lienor's prep school affiliation, however, is unnecessary. Although the first in time, first in right rule usually is treated in tandem with the choateness doctrine, *see Connecticut Mutual Life Ins. Co. v. Carter*, 446 F.2d 136 (5th Cir.), *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971) as a technical matter it is a separate doctrine, *see Kimbell Foods, Inc. v. Republic Nat. Bank*, 557 F.2d 491, 502 (5th Cir. 1977). For example, consider a private lien that arose before a federal tax lien came into existence. The private lien would be chronologically first in time. If that lien, however, was one not reduced to a judgment until after the tax lien came into existence, it might not be choate. Under a first in time rule incorporating the choateness doctrine, the tax lien would be superior to the

private lien because it would have arisen before the private lien became choate, and consequently would be first in time. If, however, the first in time rule were applied without the choateness doctrine, this result would change and the private lien would prevail because it would have arisen before the tax lien came into existence. *See* note 13 *infra*.

In the instant case, however, application of the first in time rule without the choateness doctrine would not vary the result. It is undisputed that Crittenden's lien was inchoate when the FHA'S security interest was perfected on February 2, 1972; at that time the mechanic's lien was not even in existence. Thus if the choateness doctrine applies here, FHA's security interest would be superior to Crittenden's lien. Even under the choateness doctrine, a security interest is presently existent from the time of its recordation. Furthermore, even if the choateness doctrine were rejected, FHA's lien, which was perfected before the mechanic's lien came into existence, would still be first in time. Thus Crittenden's mechanic's lien could not be superior to FHA's perfected security interest unless both the choateness doctrine and the first in time rule were rejected.

property and a second mortgage lien held by FHA. In *Connecticut Mutual* an insurance company held a mortgage on farm property which contained a standard provision for payment of attorney's fees in case of default. FHA, with full knowledge of the prior mortgage and its attorney's fee provision, then perfected a second mortgage on the same property. When the debtor defaulted, FHA argued that its second mortgage was superior to the lien for attorney's fees because the latter lien was inchoate when FHA's mortgage attached. In rejecting this argument, we relied on a section of the Tax Lien Act which provided that a lien for attorney's fees, if valid under local law, would no longer be subordinate to a subsequently-filed federal tax lien. 26 U.S.C. § 6323(b)(8).[12]

While recognizing that the Tax Lien Act did not of itself affect the priority of the competing claims in the case, we concluded that

> the statute diminishes the validity of the choate lien test in the important field of taxation where the doctrine originated. It would indeed be anomalous and contrary to our view of congressional intent to allow the FHA operating as a money-

lending agency to prevail in a situation where the government as holder of a tax lien would have an inferior security interest. . . . The collection of taxes is certainly more vital to the government's existence than the making of farm loans and if Congress determines (as it has) that a federal tax lien, involuntarily imposed upon the government, is not unduly threatened by an inchoate lien for attorneys' fees, then we see no reason to exempt a federal mortgage lien, which the government sought to obtain, from the operation of a provision for attorneys' fees in a first mortgage.

446 F.2d at 139 (citations omitted). *See Kimbell Foods, Inc. v. Republic National Bank,* 557 F.2d 491 (5th Cir. 1977); *Ault v. Harris,* 317 F.Supp. 373 (D.Alaska 1968), *aff'd and opinion adopted sub nom. Ault v. United States,* 432 F.2d 441 (9th Cir. 1970). *See also United States v. California-Oregon Plywood, Inc.,* 527 F.2d 687 (9th Cir. 1975); *Hayden v. Prevatte,* 327 F.Supp. 635 (D.S.C. 1971); Comment, *The Priority of Federal Claims: Selected Problems and Theorical Considerations,* 24 Case W.Res.L.Rev. 521, 534–35 (1973).[13]

**12.** In pertinent part, 26 U.S.C. § 6323 provides:

(b) Even though notice of a lien imposed by section 6321 [federal tax lien] has been filed, such lien shall not be valid—

(8) Attorneys' liens—With respect to a judgment . . . as against an attorney who, under local law, holds a lien upon . . such judgment . . . .

**13.** In *Kimbell Foods, Inc. v. Republic Nat. Bank,* 557 F.2d 491 (5th Cir. 1977) we recently reaffirmed *Connecticut Mutual's* rejection of the choateness test. Kimbell had perfected a security interest in the debtor's property to secure present and future indebtedness resulting from the debtor's inventory purchases from Kimbell on credit. The Small Business Administration later guaranteed a Republic National Bank loan to the debtor and subsequently was assigned 90% of the Bank's note and its corresponding rights under the financing statement. The dispute centered on the relative priority of Kimbell and SBA's liens on the debtor's property. Although Kimbell's security interest was perfected first, its lien securing future indebtedness may not have been "choate" at the time SBA's interest arose. The court followed *Connecticut Mutual* in rejecting the choateness test and held Kimbell's lien superior.

The court's analysis, however, differed somewhat from that employed in *Connecticut Mutual.* In *Kimbell* we drew a distinction between the federal first in time, first in right priority scheme and the choateness doctrine, which determined the time at which the competing state claim was sufficiently certain to be compared chronologically with the federal claim in determining which was first in time. Because Kimbell's interest was perfected under the U.C.C. prior to the perfection of SBA's lien, our rejection of the choateness doctrine made Kimbell's lien "first in time." In those circumstances we held that Kimbell's lien took priority without questioning the validity of the first in time priority scheme. In fact, we carefully left open the application of the first in time rule in the context of special priority liens such as mechanic's liens. *Kimbell Foods, supra,* 557 F.2d at 503 n.15.

In *Connecticut Mutual* we were faced with the same fact pattern as in *Kimbell.* The attorney's fee provision in Connecticut Mutual's security interest was also perfected before the federal lien was filed, and like the lien securing future indebtedness in *Kimbell,* it was probably inchoate at the time the government's security interest was filed. Nevertheless, the court in

The instant case falls squarely within the *Connecticut Mutual* rationale. A companion section in the Tax Lien Act to that relied on in *Connecticut Mutual* provides that

(b) Even though notice of a lien imposed by Section 6321 [federal tax lien] has been filed; such lien shall not be valid—(5)—[w]ith respect to tangible personal property subject to a lien under local law securing the reasonable price of the repair or improvement of such property, as against a holder of such a lien, if such holder is, and has been, continuously in possession of such property from the time such lien arose.

26 U.S.C. § 6323(b)(5).

This quoted provision of the Act rejects the first in time rule in determining the relative priority of a federal tax lien and a mechanic's lien and would clearly apply to Crittenden's lien if the government held a tax lien. For the same reasons expressed in *Connecticut Mutual*, we see no reason why FHA's mortgage lien should prevail in situations in which Congress has decided that a tax lien should be inferior.

Appellant appears to recognize that *Connecticut Mutual* controls the case at bar and, rather than try to distinguish that

case, argues that *Connecticut Mutual* should be limited to its facts.[14] In support of this position, appellant cites decisions of the Second, Fourth, and Tenth Circuits that considered the same issue and concluded that the first in time, first in right rule applied. *See United States v. General Douglas MacArthur Senior Village, Inc.*, 470 F.2d 675 (2nd Cir. 1972), *cert. denied*, 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973); *T. H. Rogers Lumber Co. v. Apel*, 468 F.2d 14 (10th Cir. 1972); *Aetna Insurance Co. v. United States*, 456 F.2d 773, 197 Ct.Cl. 713 (1972); *H. B. Agsten & Sons, Inc. v. Huntington Trust and Savings Bank*, 388 F.2d 156 (4th Cir. 1967). These courts reasoned that Congress did not intend the Tax Lien Act to apply to non-tax liens and that it is up to Congress to extend the policies of the Tax Lien Act to other areas.

This use of Congressional intent is misconceived. Even if the Federal Tax Lien Act does not determine the parties' rights here, it can be said that that law has a consanguinity with our problem, even though our problem is not decided statutorily as a descendant of the Act. In the creativity of law we are not forbidden, in fact we are encouraged, to look to statutes in the area of discussion in order to flesh

*Connecticut Mutual* did not distinguish between the first in time rule and the choateness doctrine. After rejecting the choateness doctrine, the court assumed that the first in time test also was inapplicable and held that the FHA was subject to the same local law rules that governed the security interests of all other lenders. *Connecticut Mutual, supra*, 446 F.2d at 139. But as in Kimbell, the *Connecticut Mutual* court could have reached the same result by applying the first in time rule, since the private lien for attorney's fees was perfected before FHA's mortgage was filed.

This case, on the other hand, forces us to address the first in time rule directly. Because FHA perfected its security interest before Crittenden's lien arose, its lien would be "first in time" even if the choateness doctrine did not apply. For the reasons discussed in this section of our opinion, we have chosen to follow the *Connecticut Mutual* rationale and reject the first in time rule in determining priority between an FHA security interest and a mechanic's lien.

**14.** Appellant argues that our decision in *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040

(5th Cir. 1972), limits *Connecticut Mutual* to its facts and reaffirms the validity of the choateness doctrine. We disagree. *See Kimbell Foods, supra*, 557 F.2d at 501 n.12. *Texas Oil* involved a private lien that was inferior to a federal tax lien under the provisions of the Federal Tax Lien Act itself. That Act recognized the priority of certain state interests, essentially granting exceptions to both the choateness doctrine and the first in time rule. Because the Act did not remove the particular state lien at issue in *Texas Oil* from the operation of the choateness doctrine, we found for the government on the basis of that doctrine. *Texas Oil* is not relevant to the case at bar; it merely stands for the obvious proposition that if the Tax Lien Act does not grant priority to a private lien over a tax lien, the tax lien is superior, and to that extent the choateness doctrine is still applicable. But in *Connecticut Mutual* and the case at bar, it is clear that the private liens at issue would be superior to a tax lien under the Tax Lien Act. We are faced with a situation in which, at least for tax liens, the Act abolishes both the choateness doctrine and the first in time rule.

out congressional attitude and philosophy which, whenever possible, should cohere with the evolving federal common law. The opinion in *Connecticut Mutual* recognized that the Tax Lien Act does not itself change the priority of competing claims in an FHA case. At the same time, we concluded that the Act, by rejecting the Supreme Court's test in the tax lien area, eliminated the jurisprudential underpinnings of the lower courts' attempts to apply the choateness doctrine to other areas. The same is true of the first in time rule. We adhere to our position in *Connecticut Mutual* and reject the application of the first in time, first in right rule in the case at bar.

We note that our approach here is consistent with accepted commercial principles. Possession is not an alien concept to commercial lien law, and the improver of property has not been a pariah among competing lienholders. For example, Uniform Commercial Code § 9–310 provides that

When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.

The stated purpose of this section, which has been adopted by the vast majority of states, is "to provide that liens securing claims arising from work intended to enhance or preserve the value of the collateral take priority over an earlier security interest even though perfected." U.C.C. § 9–310, Comment 1.

The prior secured creditor's interests are not prejudiced by granting the mechanic's lien superpriority status because the value of the secured party's collateral is usually enhanced by at least the amount of the

lien.[15] The debtor can be expected not to incur expenses greater than the benefit conferred upon him. Thus in the case at bar FHA should be in the same position after Crittenden's lien attached as it was prior to Crittenden's labors. To allow a creditor to claim improved personal property at the expense of the repairman's interest in such a situation would grant the creditor an unfair windfall. *See* II G. Gilmore, Security Interests in Personal Property 878 (1965).

From the mechanic's viewpoint, the principle of just compensation supports superpriority for mechanic's liens. Congress in the Tax Lien Act recognized the equities of the mechanic's position. As we commented when construing § 6323(b)(5) of the Act in *Citizens Co-op Gin v. United States*, 427 F.2d 692, 698 (5th Cir. 1970):

The statute was designed to protect the small businessman who operates informally, depending upon an oral agreement and his possession to enforce his claim for a reasonable fee for services which rendered the property more valuable. . . The person involved, because of the informality of the transaction and well established custom, is unlikely to check the tax notices or obtain a written security agreement, but he does by custom retain control of the property until he is paid. When such a transaction—whether it be the repair of an automobile or the harvesting and ginning of cotton—increases the value of the property, we think Congress intended that the workers' security be protected against the federal tax lien. To hold otherwise would create injustice and hardship, a result contrary to the remedial purposes of the statute.

Almost every state has recognized the justice of granting mechanic's liens priority

---

15. It is possible that the mechanic's efforts occasionally will not increase the value of the collateral by the amount of the lien. *See* J. Honnold, *supra* at 667–68. To help protect the secured party from unfair loss, U.C.C. § 9–310 has been interpreted to deny mechanic's lien priority for any part of the mechanic's charges

that are unreasonable. *See e. g., Mousel v. Daringer*, 190 Neb. 77, 206 N.W.2d 579 (1973). *See also* II G. Gilmore, Security Interests in Personal Property 887–89 (1965). Federal Tax Lien Act § 6323(b)(5) also adopts this approach, granting priority only for "the reasonable price of the repair."

over perfected security interests.[16] Congress has acknowledged the equities of the mechanic's position in the Tax Lien Act. Yet appellant offers no justification for the first in time, first in right rule other than the rather feeble argument that the government's interest in collateral that secures its loans to the public is automatically superior, merely because the government is involved, to the interest of all third parties in the same collateral. We see no reason for assuming that FHA has a greater interest in the recovery of its loans than does any other lender. That there is a federal interest in protecting the federal fisc does not mean that we must fashion a rule under which the government always wins. We recognize that lienable lending by our federal government in recent years is not pygmoid, but this federal interest still should not be controlling where, as here, FHA was engaged in local moneylending transactions. See Ault v. Harris, supra, 317 F.Supp. at 374–75. FHA's more genuine interest in fair treatment under the controlling commercial practices is adequately protected by federal court jurisdiction and choice of law

power in the resolution of disputes involving FHA.

We therefore choose not to give primacy to the doctrine of first in time, first in right. In evolving the law of liens we meet many complex problems which are not solvable by apothegmatic conclusions or maxims of easy verbalization, but which challenge profound analysis.

### 2. The Applicable Federal Rule

■ Having rejected the first in time, first in right rule, we must now choose between an autonomous federal rule modeled upon Uniform Commercial Code principles and a federal rule incorporating the local state law. In transactions arising in the vast majority of states, this issue would be relatively unimportant because most states have adopted the model version of U.C.C. § 9–310, quoted above, which grants superpriority to certain mechanic's liens. In Georgia, however, such superpriority may not exist. Ga.Code Ann. § 109A–9–310.[17] Because the instant transaction would be governed by Georgia law if state law were applied, this issue is pivotal here.

16. Appellant's own brief quotes with approval the following passage from the district court opinion in J. S. Purcell Lumber Corp. v. Henson, 405 F.Supp. 1130, (E.D.Va.1975). The district court judge felt constrained by the Fourth Circuit's prior pronouncement in H. B. Agsten & Sons, supra, from adopting the Connecticut Mutual approach:

Though right, equity, good sense, and good commercial practice seem to dictate the contrary, it is clear, as Judge Soboloff notes, that Congress has not changed the priority rule except in the case of tax liens. Therefore, this Court must hold that the United States' lien secured by its deed of trust has priority over the mechanics lien asserted by Purcell. It is reassuring to know that even appellant does not disagree that "right, equity, good sense, and good commercial practice" support our position.

17. This result under Georgia state law is by no means clear. The 1953 version of Ga.Code Ann. § 67–2003 granted mechanics a lien for improvements or repairs on personal property and provided that this lien shall be superior to all other liens except liens for taxes and liens of which the mechanic has actual knowledge. The 1963 version of Ga.Code Ann. § 109A–9–310 reversed the priority provisions of § 67–

2003 by providing that perfected security interests take priority over certain liens, including the mechanic's lien. However, in 1972 § 67–2003 was struck in its entirety and a new Code section 67–2003 was inserted in lieu thereof. With the exception of a new provision providing for a storage lien, this new version of § 67–2003 is substantially the same as the prior version and retains the superpriority provision for mechanic's liens. Crittenden maintains that the superpriority provision in the 1972 version of § 67–2003 was intentionally included by the legislature, and that the 1963 version of § 109A–9–310 was thus impliedly repealed insofar as it applied to mechanic's liens. Appellant argues that the retention of the superpriority provision in the present version of § 67–2003 was an oversight, and that there is no evidence that the legislature intended to change the application of § 109A–9–310 with respect to mechanic's liens. The few recent Georgia cases which mention these sections do not recognize or resolve this inconsistency. Park Avenue Bank v. Bassford, 232 Ga. 216, 205 S.E.2d 861 (1974); Gwinnett Sales & Service v. Trust Company of Ga., 130 Ga.App. 31, 202 S.E.2d 255 (1973). Because of our decision to fashion a single federal rule, we need not wade further into this state law quagmire.

The argument for applying state law in this situation is that any person who held an interest in Bridges' tractor would justifiably rely on state law governing his rights. These expectations should not be thwarted merely because it later turns out that FHA also is an interested party. "By making farm loans, FHA became subject to the same requirements of local law which govern the validity of security interests in respect to all other lenders." *Connecticut Mutual Life Ins. Co. v. Carter, supra,* 446 F.2d at 139.[18]

This reasoning may be compelling in some situations. For example, if a particular state law granted superpriority status to mechanic's liens with or without notice of existing security interests, but the Uniform Commercial Code and the great weight of state authority required the mechanic to check the records and obtain a waiver from secured parties before commencing work, we might be loath to apply the U.C.C. rule even if we felt that it represented sound commercial policy. The mechanic might have justifiably relied on state law in not checking the records, and it would be unfair to disappoint his expectations merely because the secured party turned out to be FHA. In such a situation if the state law policy was reasonable and did not unfairly burden FHA, we might decide that the state law rule should apply.

This, however, is not the case here. Regardless of whether FHA would have priority under Georgia law, *see* note 17 *supra,* no reasonable expectation of the mechanic would be thwarted by adopting a rule modeled after U.C.C. § 9–310 instead of incorporating the Georgia rule. Indeed, Crittenden is at least as well off under the U.C.C. rule as he would be under Georgia law. Moreover, application of U.C.C. principles in

place of the Georgia rule rests on the sound policy basis which we have discussed above. Superpriority for mechanics has been embraced by Congress in the Tax Lien Act, 26 U.S.C. § 6323(b)(5), and by the overwhelming majority of states in their adoption of the model version of U.C.C. § 9–310. The limited priority of the mechanic's lien is not new to our jurisprudence, and even in the complexity of our modern commercial society, it is a doctrine of respectful antiquity and one not to be discarded facilely and without real justification by the evolving common law. We agree and concur in the view that uniformity in government lending is an important policy pursuit, but this does not necessitate granting the government automatic superiority. We must also consider the equities favoring the mechanic who labors on property upon which the government holds a lien. There is nothing destructive of the uniformity concept in according some validity to a mechanic's lien. We thus see no reason not to afford mechanics the protection found in U.C.C. 9–310 and the Federal Tax Lien Act § 6323(b)(5). The provisions of U.C.C. § 9–310 should, therefore, be used as a model for the creation of an analogous federal common law rule for resolving disputes over the relative priority of an FHA security interest and a mechanic's lien.

■ This result is consistent with our prior decisions. In *United States v. Hext, supra,* we held that "in fashioning the federal law that is applicable to suits arising from the FHA program we shall be guided by the principles set forth in Article 9 and other relevant portions of the Uniform Commercial Code." 444 F.2d at 810. Moreover, because the Uniform Commercial Code embodies rules of nationwide applicability, this result satisfies one of the princi-

18. Our decision in the choice of law context that state law should not govern the rights and liabilities of FHA was based in part upon the possibility that state law might discriminate against a federal agency. This consideration is much less significant to our decision as to whether the federal rule should incorporate state law. While it is certainly correct that federal rights should not be placed within the power of any particular state court or legisla-

ture to change the applicable law, *U. S. v. Hext, supra,* 444 F.2d at 810–11, a decision by this court to incorporate state law would not mean that federal courts must blindly follow a state law which was designed to prejudice federal interests or which produced results consistently antagonistic to those interests. Federal jurisdiction and the fact that state law would apply only by virtue of incorporation into federal law would prevent such a result.

pal justifications for the first in time rule—the need for a uniform rule of decision in administering a nationwide program. At the same time, application of Uniform Commercial Code principles ensures that the rights and duties of the FHA will be substantially the same as those of other lenders, and thus the reliance of third parties on state commercial rules will no longer be frustrated merely because a government lender enters the scene.[19]

## IV. Application of the Federal Rule—Divvying Up the Tractor at Last

[8] Having determined to look to the Uniform Commercial Code as a source for fashioning federal law applicable in this case, we find that Crittenden's mechanic's lien is superior to FHA's security interest at least to the extent of the $543.81 owing from repairs made during Crittenden's last possession of the tractor. We have already noted that after FHA perfected its security interest on February 2, 1972, Bridges began bringing his tractor to Crittenden for repairs. Crittenden did the necessary work and then returned the tractor to Bridges on each of six occasions. Between December 29, 1972 and December 21, 1973 Bridges accumulated a repair bill of $1607.47. Finally, on December 21, 1973 Bridges delivered the tractor for repairs costing $543.81.

This last visit left an unpaid bill of $2151.28 which Bridges was unable to pay. Crittenden retained possession of the tractor at that time and has remained in possession ever since.

U.C.C. § 9–310 provides that a mechanic's lien under state law upon goods in the lienholder's possession takes priority over a perfected security interest. As we discussed above, this Code section reflects sound policy and is not prejudicial to FHA's interests. We therefore adopt U.C.C. § 9–310, as the governing federal common law rule. Applying this rule, we first note that Georgia law recognizes a mechanic's lien for improvements made to personal property. Ga.Code Ann. § 67–2003. The Georgia statute is precursive, that is, it merely creates the possibility that under its aegis, the mechanic's lien will be granted superpriority under federal common law, the U.C.C., or state law. Here U.C.C. § 9–310 grants this state law lien priority if its "possession" requirement is satisfied. Because Crittenden was in continuous possession of the tractor from the time that the $543.81 portion of his lien arose, the possession requirement was satisfied and under the applicable law his lien takes priority over FHA's security interest at least to the extent of $543.81.[20]

19. We pause here to note that we have purposely not held that the Code and the general body of precedent developed by the Code states should automatically be applied to all FHA transactions. As we stated in *United States v. Hext, supra*:

[W]e are merely exercising the traditional judicial technique of making "use of a statutory rule as a model for the creation of an analogous judicial rule" which has been so ably discussed by Justice Roger J. Traynor of the Supreme Court of California. *See* Traynor, Statutes Revolving in Common Law Orbits, 17 Cath.U.L. Rev. 401, 420 (1968).

444 F.2d at 810 n.17 (emphasis supplied). While the Code generally should be used to supply the content of the federal common law rules governing suits arising from FHA transactions, in fashioning a federal rule specific Code language and judicial interpretations need not be followed if the federal courts deem them contrary to the weight of authority, inconsistent with FHA operations, or undesirable as precedent. *Cf. United States v. Hext, supra,* 444 F.2d at 811. The U.C.C., and in other

contexts state law, can inform, but it need not rule.

20. This result is reached even if we assume that Georgia law does not grant superpriority to mechanic's liens. *See* note 17 *supra*. Ga. Code Ann. § 67–2003 creates the mechanic's lien, and federal law guided by U.C.C. § 9–310 grants that lien priority. U.C.C. § 9–310 provides priority for mechanic's liens over perfected security interests "unless the lien is statutory and the statute expressly provides otherwise." In this case the state statute creating the lien, Ga.Code Ann. § 67–2003, does not so provide and priority is thus established. However, in light of our decision to grant mechanic's liens priority over FHA security interests regardless of whether the relevant state law incorporates U.C.C. § 9–310, we would reach this result even if the state statute creating the mechanic's lien provided that the lien was not superior to prior perfected security interests. State law creates the lien; federal law governs its priority. In adopting U.C.C. § 9–310 we thus reject the "unless" clause quoted above. See our discussion in note 19 *supra*.

The only remaining issue is whether that portion of Crittenden's lien representing repairs made before his last possession of the tractor should be given priority over FHA's security interest.[21]

U.C.C. § 9–310 provides in relevant part that "a lien upon goods in the [mechanic's] possession . . . takes priority over a perfected security interest." (emphasis supplied) A mechanic's lienor not in possession of the collateral is thus not granted priority. *See* G. Gilmore, Security Interests in Personal Property 873, 887–88 (1965); Comment, *Nonconsensual Liens Under Article* 9, 76 Yale L.J. 1649, 1656–61 (1967). This is true even when the state law does not require the mechanic to maintain possession in order to assert his lien against the debtor; possession is still required to maintain the *priority* of the statutory lien over previously perfected security interests. *Forrest Cate Ford, Inc. v. Fryar*, 465 S.W.2d 882 (Tenn.App.1970). Unfortunately, the case law is not instructive in determining whether the possession requirement of U.C.C. § 9–310 cuts off the mechanic's priority forever once possession is lost; we have not discovered a single reported case in which possession was relinquished by a mechanic and subsequently regained.

We turn instead to the Federal Tax Lien Act to give content to the possession requirement of U.C.C. § 9–310. Section 6323(b)(5) of the Act grants priority to a mechanic's lien only if the mechanic "is, and has been, *continuously* in possession of such property from the time such lien arose." 26 U.S.C. § 6323(b)(5) (emphasis supplied) While actual possession is not always necessary to meet this continuous possession requirement, the Tax Lien Act demands at least constructive possession by the lienholder. *Citizens Co-Op Gin v. United States, supra,* 427 F.2d at 695–97. Lienholders who relinquish actual possession must intend "to withhold the property from the owner until the improvement charges against the property are satisfied." *Id.* at 697.[22]

In light of the possession requirement found in the Uniform Commercial Code and continuous possession requirement of the Federal Tax Lien Act, we hold that a mechanic's lien is superior to an FHA security interest only to the extent that the mechanic continuously possesses the collateral.[23] Applying this rule to the instant

---

21. It appears that Ga.Code Ann. § 67–2003 continues to recognize a mechanic's lien even after possession is lost, and we assume for purposes of this opinion that Crittenden's lien under state law totals $2151.28 ($543.81 for Crittenden's last continuous possession and $1607.47 for previous possessions). Because of our holding that a lien based on non-continuous possession is inferior to a perfected security interest, we need not determine whether under state law Crittenden's lien extends to the $1607.47 for prior possessions.

22. The improvement at issue in *Citizens Co-Op* required a *chain* of improvers. The court recognized that that the purposes of the superpriority provision of § 6323(b)(5) would be completely defeated if personal possession were required of each improver. So long as each member of the chain intended to withhold the property from the owner, possession by one was deemed constructive possession by all.

23. Neither the legislative history of the Tax Lien Act, nor the cases decided under the U.C.C., nor the commentators have shed much light on the policy justification for this possession requirement. Perhaps it can be best understood in the context of the Uniform Com-

mercial Code's general priority scheme. Article 9 of the Code allows a lender to perfect a security interest in collateral which is prior to virtually all subsequent interests in that collateral. This system facilitates commercial lending by assuring a lender that, once perfected, his interest will be superior to subsequent interests. Equally important, the filing requirements of U.C.C. §§ 9–401 and 9–402 provide notice to potential lenders of existing interests in the collateral. For reasons which we have already discussed, considerations of equity and fairness have led to the creation of the mechanic's lien exception in U.C.C. § 9–310 to the normal priority rules. While these considerations are persuasive immediately after repairs have been made and the owner's property is still in the mechanic's possession, at some point in time the mechanic's interest becomes indistinguishable from that of any other general creditor. Here, for example, immediately prior to Crittenden's last repair job the tractor was in Bridges' possession with some outstanding repair bills dating back almost a full year. At that point Crittenden hardly appears more entitled to special priority treatment than any other of Bridges' general creditors. In one sense, the possession requirement represents

692

case, we conclude that Crittenden's mechanic's lien is superior to FHA's security interest only to the extent of $543.81. Crittenden was neither in actual nor constructive possession of the tractor during the time that the $1607.47 portion of his lien arose because he returned the tractor to Bridges after each repair job. Thus the continuous possession requirement was not met by Crittenden for the $1607.47 portion of his lien accumulated before his last possession of the tractor.

In summary, we have determined that under federal law Crittenden's mechanic's lien is superior to FHA's perfected security interest to the extent of $543.81. The judgment of the district court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART.

an attempt to draw the line between the repairman's status as a mechanic entitled to superpriority and his status as a general creditor.

Choosing possession to delineate these two statuses can be justified. The possession requirement allows the mechanic to be master of his own fate; he maintains superpriority as long as he retains possession of the collateral. Appellee argues here that if he had retained possession of the tractor, he would have deprived Bridges of using a vehicle essential to the maintenance of the farm. Crittenden maintains that he not only improved the value of the tractor itself, but that by relinquishing possession of the tractor, he also increased the value of Bridges' crops, and consequently the value of FHA's security. This argument is not persuasive. The mechanic could have checked the records and then requested a release from the FHA and other secured parties. If the FHA would have been better off with the tractor in the debtor's possession, it would have given the mechanic a release. In any event the decision properly rests with the secured party. The FHA, with no notice of the intervening mechanic's lien, is not in a position to protect its rights and interests if Crittenden neither retains possession nor requests a release. Thus the possession requirement allows the mechanic to maintain the superpriority status of his lien by retaining possession or obtaining appropriate releases, while at the same time it ensures that holders of prior perfected security interests will receive notice of intervening interests affecting the value of their collateral.