**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**S.K.A. ASSOCIATES, INC., et
al., Defendants,**

**The S. K. A. Associates, a partnership,
Defendant-Appellant.**

No. 76–2574.

United States Court of Appeals,
Fifth Circuit.

Aug. 9, 1979.

Arthur S. Weitzner, Miami, Fla., for defendant-appellant.

Harland F. Leathers, Sp. Asst. to Atty. Gen. Morton Hollander, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before JONES, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

In this action initiated by the Small Business Administration to replevy and foreclose upon certain personal property of its debtor, the district court applied federal law to determine the priority of a conflicting landlord's claim, and found that claim to be inchoate so that it could not prevail against the SBA consensual security interest. After oral argument on appeal, the case was held pending review by the United States Supreme Court of our decision in *Kimbell Foods, Inc. v. Republic National Bank*, 557 F.2d 491 (5th Cir. 1977).

■■■ The Supreme Court has now decided that under federal law "the relative priority of private liens and consensual liens arising from these Government lending programs is to be determined under nondiscriminatory state laws." *United States v. Kimbell Foods, Inc.*, —— U.S. ——, ——, 99 S.Ct. 1448, 1465, 59 L.Ed.2d 711 (1979). Under Florida law, a landlord's lien against personal property on the leased premises prevails over a subsequent consensual lien. To thus place the Government in "substantially the same position as private lenders,"

—— U.S. at ——, 99 S.Ct. at 1463, the judgment of the district court is reversed and the case remanded for the determination of the amount of the landlord's lien and entry of such orders as necessary to afford relief to the landlord consistent with this opinion.

1. *Facts*

ACS Industries, Inc., a tenant, assigned or subleased its tenancy to American Universal Industries, Inc. American occupied the premises. On April 29, 1974, American borrowed $250,000 from the Bank of Miami, a loan which the Small Business Administration agreed to guarantee. On SBA Form 147, American executed a note to the bank which specifically provided:

This promissory note is given to secure a loan which SBA is making or in which it is participating and, pursuant to Part 101 of the Rules and Regulations of SBA (13 C.F.R. 101.1(d)), this instrument is to be construed and (when SBA is the Holder or a party in interest) enforced in accordance with applicable Federal law.

American also executed two form security agreements to secure the note. One covered "Debtor's inventory and accounts receivable, and proceeds thereof," and the other covered "all machinery, equipment, furniture, and fixtures now owned and hereafter acquired by Debtor for use in Debtor's business" including 79 specifically described items. Both agreements named ACS as the owner of the premises where the collateral would be kept, and, in printed terms, required disclaimers of all interest in the collateral from persons having an interest in the real estate. The security interests thus created were perfected by filing with the Office of the Secretary of State, State of Florida, but there is no evidence that the required disclaimers were ever obtained by the bank.

American defaulted on its rent payments in November 1974. On February 13, 1975, an involuntary petition was brought seeking to have American adjudicated bankrupt. Thereafter, a proceeding pursuant to Chap-

ter XI was instituted. On April 28, the bank assigned the note and security agreements to the SBA. On May 16, American defaulted on the note, and in June the Chapter XI proceeding aborted and American was adjudged bankrupt. On July 7, the bankruptcy judge, noting that the SBA's lien on the items of equipment exceeded their value, authorized the trustee to abandon them. The trustee surrendered the premises to S.K.A. Associates, Inc., the landlord.

This specific dispute arose when S.K.A. refused to turn the abandoned property over to the SBA. S.K.A. maintains that it has a landlord's lien for unpaid rent, Fla. Stat.Ann. § 83.08(2) (West Supp.1978), which is superior to the SBA's perfected security interest and which, like the SBA's claim, exceeds the value of the collateral. The United States filed this action for replevin and foreclosure of the lien. The property was sold, the proceeds were paid into court, and the district court then granted judgment for the United States, holding that under federal law the SBA's lien was prior in time because when it arose the landlord's lien was "inchoate." *Cf. United States v. New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 98 L.Ed. 520 (1954) (defining choateness).

### 2. *Florida Law*

■ S.K.A. claims its landlord's lien under a special Florida statute which creates a lien and designates its priority. The statute, Fla.Stat.Ann. § 83.08(2) (West Supp. 1978), bestows a lien for rent

> [u]pon . . . property of the lessee or his sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of such property on the premises leased.

As interpreted by the courts, the lien attaches either at the time of the commencement of a tenancy or when a chattel is brought on the premises, whichever is later, and is superior to a subsequently created chattel lien. *Brod v. Third Realty Co.*, 340 F.2d 591 (5th Cir. 1965); *G. M. C. A. Corp.*

*v. Noni, Inc.*, 227 So.2d 891 (Fla.Dist.Ct. App.1969); *see* 20 Fla.Jur. *Landlord & Tenant* §§ 93, 95 (1958 and 1979 Supp.).

■ While the Florida cases on point are not legion, the priority appears to date from the beginning of the tenancy even when the rent default occurs after the intervening lien has been perfected. In *Lovett v. Lee*, 141 Fla. 395, 193 So. 538 (1940), the debtor failed to pay a chain store tax and a Comptroller's warrant was filed and docketed, perfecting the state's lien on the debtor's goods. The debtor then defaulted on its rent. The Florida Supreme Court held the statute gave the landlord a priority claim for rent accruing until the time the goods were removed and sold, even though the landlord did not assert his lien until after the sale. 193 So. at 542. Applied here, that rule would give S.K.A. priority for the disputed property on the leased premises at the time the bank executed its security interest, even though the security interest was obtained prior to default.

### 3. *Was S.K.A. A Landlord?*

In the face of apparently clear Florida law, the SBA by supplemental brief asserts two arguments in an effort to uphold the result reached by the district court. First, arguing that S.K.A. has not established priority under Florida law, the Government asserts the record does not establish that S.K.A. was the debtor's landlord, and does not show that SBA's lien was acquired subsequent to the bringing of the property onto the premises leased.

This kind of argument would generally contest the Government's motion for final judgment, rather than support it, because it suggests unresolved issues of fact. Summary judgment can be entered as a matter of law only when there is "no genuine issue as to any material fact." Rule 56, Fed.R. Civ.P.

In this case, the district court found S.K.A. to be the landlord with a Florida lien claim that would relate back to a time before the Government's claim arose.

The most strenuous opposition to enforcement of the government's lien has

come from the landlord, SKA. By virtue of Florida Statutes 83.08, the landlord has a lien which relates back to the beginning of the tenancy—a time before the government's claim arose.

The record reflects that no genuine issue was raised as to these facts. The Government alleged in its complaint that S.K.A. was the landlord. The security instruments themselves indicate that the property of the debtor pledged for the loan was on the leased premises at the time the instruments were executed.

Since the judgment is being reversed because the district court followed the wrong principle of law, rather than because there are genuine issues of fact, the district court itself can determine whether the Government has focused on a "genuine issue" and whether, in any event, it is too late in the litigation to assert the matter.

### 4. *31 U.S.C.A. § 191*

■ In its second argument, the Government asserts that despite the decision in *Kimbell*, it has a superior right to the property under 31 U.S.C.A. § 191, the so-called "insolvency" statute. The Government correctly argues that the Fifth Circuit in *Kimbell* left the question open. "Our case does not require the application of section 3466 [31 U.S.C. § 191 (1970)], since O.K. [the debtor] is not an insolvent." *Kimbell Foods, Inc. v. Republic National Bank*, 557 F.2d at 499. Yet it seems to us that Justice Marshall in his very detailed opinion for a unanimous Court in *Kimbell* sought to carefully instruct Government agencies that in their commercial lending activities they are subject to "customary commercial practices," —— U.S. at ——, 99 S.Ct. at 1461, and should fare no better, and no worse, than a private lender.

The Government's argument seems to be answered in the case of *United States v. Crittenden*, 563 F.2d 678 (5th Cir. 1977), which was vacated and remanded for determination of state law by the Supreme Court in *Kimbell, supra*. The Supreme Court there applied precisely the same rule of law as in *Kimbell* to a contest between a me-

chanic's lienholder and the Government as a consensual lienholder where the debtor was insolvent as far as those claims were concerned. The debtor had filed for bankruptcy and had been discharged of his debts, so that he would not have to respond to the claim of whichever creditor lost the lien contest. Although that case involved a Farmers Home Administration loan program rather than the SBA, § 191 and *Small Business Administration v. McClellan*, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200 (1960), upon which the Government relies, would be equally applicable to FHA and SBA loans, and there is no reason to suppose that the statute was inadvertently overlooked by the Court in *Kimbell*. The Supreme Court by its decision of the *Crittenden* case thus appears to reject the argument the Government makes here.

■ Even if not controlled by the Supreme Court's decision of the *Crittenden* case, the answer to the Government's contention would be this: The Supreme Court's meticulous rationale in *Kimbell* rejecting every Government argument for favored treatment makes so much good sense that it should be applied effectively. To hold that federal law adopts state commercial law in a dispute between lienholders when the debtor is solvent, but not when he is insolvent, would deprive private lenders of equanimity when it is most needed. We, therefore, reject the argument that § 191 gives the Government as a secured lienholder a priority over other lienholders that it would not enjoy under state commercial law.

REVERSED AND REMANDED.