W. R. Lovett v. J. M. Lee, as State Comptroller, and Rex Sweat, as Sheriff of Duval County; B. & B. Holding Company v. J. M. Lee, as State Comptroller, and Rex Sweat, as Sheriff of Duval County; J. R. E. Kennedy v. J. M. Lee, as State Comptroller, and Rex Sweat as Sheriff of Duval County; C. T. Doty, *et al.*, Intervenors.

193 So. 538

(3 Suits)

Opinion Filed January 16, 1940

Rehearing Denied February 21, 1940

396

▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

*Ragland, Kurz & Layton,* for W. R. Lovett, *et al.; L. R. Milton,* for James Uriah Bowden; *Jennings & Watts,* for C. T. Doty; *J. Retta E. Shad* and *A. E. Baines,* for Jacksonville Monticello Realty Co.; *W. McL. Christie* and *Rhydoon C. Latham,* for B. & B. Holding Co.; *Rogers & Towers,* for Florida National Bank, as Trustee, and O. B. Singletary and wife; *J. M. Glickstein,* for Main 8th, Inc.; *Harvey Mabry,* for John H. Peters; *Harry B. Fozzard,* for Norman C. Edwards, Appellants.

*George Couper Gibbs,* Attorney General, and *Tyrus A. Norwood, Assistant* Attorney General, for Appellees.

Brown, J.—This is an appeal from a final decree of the Circuit Court of Duval County dismissing the bills of complaint of the several complainants.

Whiddon Cash Stores, a Florida corporation, was engaged in the retail grocery business in Jacksonville, Florida, and operated a number of stores. They were subject to the tax imposed under Chapter 16848 of the laws of 1935, Generally known as the "Chain Store Tax." The Chain Store tax was not paid and on November 12, 1937, Hon. J. M. Lee as Comptroller of the State of Florida, in pursuance of Section 12 of said Act, caused a warrant to be issued for the amount of the taxes owing by said Whiddon Cash Stores, and on November 19, 1937, the Sheriff of Duval County caused a copy of said warrant to be filed in the office of the Clerk of the Circuit Court of said county, which copy was docketed by said clerk that day. Some

six months later, on June 17, 1938, the sheriff, in pursuance of said warrant, levied upon personal property owned by Whiddon Cash Stores and located upon premises owned by these various appellants respectively. On the date that the copy of said warrant was filed in the clerk's office and docketed by the clerk, the relation between the respective appellants and Whiddon Cash Stores was that of landlord and tenant, and on said date and prior thereto Whiddon Cash Stores had in each of the stores personal property, furniture and fixtures, which were usually kept by Whiddon Cash Stores on the respective demised premises.

The personal property so levied upon was sold by the sheriff on July 25, 1938, to J. M. Lee as Comptroller, he having been the highest and best bidder.

Between the date of the filing and docketing of the copy of the Comptroller's warrant and the date of the Sheriff's sale, rents became payable to the appellant landlords, respectively, and the Comptroller had knowledge of the claims of said landlords at the time that the sale was made. The amount bid by the Comptroller for property located in each store was more than enough to pay the claim of each landlord for rent that had become due as above set forth.

The appellant W. R. Lovett filed a bill against Hon. J. M. Lee as Comptroller and Rex Sweat as Sheriff of Duval County, for the purpose of enjoining the sheriff from paying over the proceeds of the sale and restraining the Comptroller from removing the property from the demised premises until the claim for rent should be paid. A similar suit was instituted by appellants B. & B. Holding Company and J. R. E. Kennedy. The court ordered these suits to be consolidated. Other appellant landlords intervened, making the same claim that was made by appellant W. R. Lovett, that is, that the landlord's lien as against property

usully kept on the demised premises accrued with the beginning of the tenancy, though the rent did not become payable under terms of the leases until after copy of the Comptroller's warrant was filed and docketed in the clerk's office, alleging that said landlords' lien was superior to the lien claimed by the Comptroller.

By order of the court made December 6, 1938, the sheriff was permitted to pay the proceeds of the sale into the registry of the court and the property sold was removed from the various premises.

The question whether the liens of the landlords were superior to the lien of the State under the Chain Store Act was raised in some instances by motions to dismiss bills, and in other instances by answer and counter-claims.

The Circuit Court, by decree made March 29, 1939, found that the liens of landlords for rent that became due and payable after copy of the Comptroller's warrant was filed and docketed in the clerk's office and prior to the date of sale by the sheriff was subject and subordinate to the claim of lien made by the Comptroller and entered a decree accordingly, from which decree this appeal has been taken.

Section 11 of Chapter 16848 provides that, independently of all other remedies and proceedings authorized by the Act for the enforcement of the collection of taxes levied by the Act, a right of action by suit in the name of the State of Florida is created, and that such suit may be maintained and prosecuted, and all proceedings taken to the same effect and extent as for the enforcement of a right of action for debt or assumpsit, and that any and all remedies available in such actions, including attachment and garnishment, shall be available to the State of Florida in enforcement of the payment of such tax. This section further provides that any person refusing to make return and pay the tax levied

by the Act may be enjoined from operating in violation of the provisions of the Act upon the complaint of the Comptroller.

Section 12 of said Chapter 16848 reads as follows:

"Section 12. LIEN. There is hereby created a lien in favor of the State of Florida upon all the property both real and personal of any person who shall become liable for the payment of any tax levied and impressed upon this Act for the amount of the tax due and payable under the provisions hereof together with interest, cost and penalties, and if any tax imposed by this Act, or any portion of such tax, be not paid within sixty days after the same becomes delinquent, the Comptroller may, thereafter, issue a warrant under his official seal, directed to all and singular Sheriffs of the State of Florida commanding them to levy upon and sell any real and personal property of the person liable for said tax within their respective jurisdiction, for the payment of the amount thereof, with the added penalties, interest and the cost of executing the warrant, and to return such warrant to the Comptroller and to pay to him the money collected by virtue thereof by a time to be therein specified, not more than sixty days from the date of the warrant. The sheriff shall, within five days after receipt of the warrant, file with the Clerk of the Circuit Court of his county a copy thereof, and thereupon the clerk shall record the same in a book to be provided for the purpose, showing the name of the person mentioned in the warrant, and, in proper columns, the amount of the tax or portion thereof and interest and penalties for which warrant is issued and the date when such copy is filed, and thereupon the amount of such warrant so docketed shall become a lien upon the title to, and interest, whether legal or equitable, in any real property, chattels, real or personal property of such

person against whom such warrant is issued, in the same manner as a judgment duly docketed in the office of such Circuit Court Clerk with execution duly issued thereon and in the hands of the sheriff for levy, and such lien shall be prior, preferred and superior to all mortgages or other liens filed or recorded subsequent to the date such tax lien becomes effective. Such sheriff shall thereupon proceed upon the same in all respects, with like effect and in the same manner prescribed by law in respect to executions issued against property upon judgments of a Circuit Court, and shall be entitled to the same fees for his services in executing the warrant, to be collected in the same manner. In case of failure of any sheriff to file a copy of the warrant with the clerk of the Circuit Court as herein prescribed, a certified copy thereof filed by the Comptroller shall operate to the same effect as if same had been filed by the Sheriff."

It thus appears that Section 12 provides that the filing and docketing of the Comptroller's warrant shall become a lien "in the *same manner as a judgment duly docketed* in the office of such Circuit Clerk *with execution duly issued thereon* and *in the hands of the sheriff for levy,* and such lien shall be prior, preferred and superior to all mortgages or other liens, filed or recorded subsequent to the date such tax lien becomes effective." (Italics supplied.) It thus appears that the statute provides that the filing and docketing of the Comptroller's warrant becomes a *lien in the same manner as a judgment duly docketed,* with execution duly issued thereon and in the hands of the sheriff for levy, and that it is this lien, thus made effective by the filing and docketing, which is expressly made a lien that is "prior," preferred and superior to *all mortgages and other liens filed or recorded subsequent to the date that such tax lien becomes effective."* As landlord's liens do not have to be

filed or recorded, but are in full force and effect, both as to notice and otherwise, without such filing or recording, it is not made clear that the words "or other liens filed or recorded," etc., was intended to make the filing and docketing of the warrant a lien superior to an existing landlord's lien.

While the filing and recording of the Comptroller's warrant was intended to make definite and effective a lien for unpaid excise taxes, in the nature of a judgment lien on which execution had been issued, the statute by its express terms shows that the Legislature did not intend to make such tax lien superior to already existing "mortgage or other liens" which had been filed or recorded *prior* to the date of the filing and docketing of the Comptroller's warrant. It is only made superior to those which are filed and recorded *subsequent* to such filing and docketing of the Comptroller's warrant. As an existing landlord's lien does not have to be filed or recorded, and is not mentioned in the statute, it is extremely doubtful that the Legislature intended to make the filing and docketing of the Comptroller's warrant a lien of superior dignity to a landlord's lien which was in existence and had already vested at that time as to personal property of the tenant usually kept on the premises. We are inclined to think that this doubt should be resolved in favor of the landlord's lien for unpaid rent on the property of the tenant "usually kept on the premises," which lien is vested in the landlord by virtue of a statute which was adopted sixty years ago. (Section 420 C. G. L.) Surely the Legislature did not intend to leave undisturbed and in full force "mortgage and other liens" which were filed and recorded and yet destroy or nullify landlord's liens, which are perfectly good and effective without being filed or recorded. Why should the

Legislature treat mortgagees with greater consideration than landlords? The truth is, as I see it, that the Legislature did not intend to penalize either mortgagees or landlords, who had nothing to do with the non-payment of the tax, but did intend to enable the Comptroller to establish a lien on the property of the delinquent chain store operator, without impairing the vested rights and liens already existing in favor of innocent third parties, of which the Comptroller had notice by recording, or of which the Comptroller had constructive notice without recording.

The general rule is that, under this landlord and tenant statute, adopted back in 1879, the landlord's lien for payment of rent is superior to any judgment or other lien acquired subsequent to the creation of the tenancy and the bringing of the property on the premises. Baer v. G. M. A. Corporation, 101 Fla. 913, 132 So. 817. See also 16 R. C. L. 988; Morgan v. Campbell, 22 Wall. 381, 22 L. Ed. 796; *In Re:* Brinson, 1 Fed. (2d) 824.

In the case of Johnson v. Winn & Lovett Grocery Co., 126 Fla. 454, 171 So. 297, it was said:

"Section 5420, Compiled General Laws of 1927, fixes the status of the property involved and is as follows:

"Every person to whom rent may be due, his heirs, executors, administrators, or assigns, shall have a lien for such rent upon the property found upon or off the premises leased or rented, and in the possession of any person, as follows:

"1. Upon agricultural products raised on the land leased or rented for the current year. This lien shall be superior to all other liens, though of older date.

"2. *Upon all other property of the lessee* or his sublessee or assigns, *usually kept on the premises. This lien*

*shall be superior to any lien acquired subsequent to the bringing of such property on the premises leased.*

"3. Upon all other property of the defendant. *This lien shall date from the levy of the distress warrant hereinafter provided for."*

"The effect of this statute is to give the lessor a lien for non-payment of rent on any property on or off the premises belonging to or held by the lessee, his sub-lessee, or assigns, *such lien to date from the levy of the distress warrant provided for."* (Italics supplied.)

The words "such lien to date from the levy of the distress warrant provided for," as used in the opinion quoted from, were evidently intended by the court to apply to "all other property of the defendant" as provided for in paragraph 3 of said Section 4320 C. G. L. It could not have been, and was not, as I view it, the intention of the Court that this language of the opinion should be so construed as to write out of the statute the plain intent of paragraph 2 of Section 5420, which provides for a lien upon the property of the lessee "usually kept on the premises," independent of the levy of a distress warrant. As to this character of property, the statute immediately adds: "This lien shall be superior to any lien acquired subsequent to the bringing of such property on the premises leased." This language is perfectly clear. It is only as to the "other property of the defendant," not usually kept on the premises, covered by paragraph 3 of Section 5420 C. G. L., that the lien is made to date from the levy of a distress warrant.

In the case of Pillans & Smith Co. v. Lowe, 117 Fla. 289, 157 So. 649, Lowe was lessee under a verbal lease for a period of one year at a stipulated monthly rental. The first month's rent was paid in advance, and Lowe moved certain personal property belonging to him on the rented premises.

Before the end of the first month of the rental period Lowe executed to Pillans & Smith, Inc., a chattel mortgage covering his personal property then on the rented premises together with certain other property. Lowe thereafter defaulted in paying the second month's rent and also in payment of the chattel mortgage. The Circuit Court held that the lien of the landlord for his rent was superior in dignity to that of the mortgage under the chattel mortgage, and that tenant Lowe, not having surrendered the premises at any time before the expiration of the twelve months verbal lease, incurred a liability to the landlord for twelve months' rent at the agreed rate of $35.00 per month, to protect which the landlord had a lien under Section 5420 C. G. L. It must also be noted that the chattel mortgage was placed on the property before the rent for the second month became payable. This Court affirmed the decree of the Circuit Court. The Court did not hold in that case that there was any necessity for the issuance of a distress warrant in order to protect the landlord's lien as to the property of the lessee which was kept on the leased premises.

It is true that, as above mentioned, there was some language used in the opinion in the subsequent case of Johnson v. Winn & Lovett Grocery Company from which it might be inferred that the levy of a distress warrant was a prerequisite to the effective creation of the landlord's lien, even as to property usually kept on the premises, but that point was not necessary to a decision of the case, because in that case a distress warrant had been issued and executed. The real point involved in that case is set forth in the second headnote as follows:

"Landlord could maintain bill to prevent assignee of seller's interest in property held by tenant under conditional sales contract, from instituting proceedings to secure

possession of property, and could tender amount due assignee on contract and subject property to payment of arrears of rent, notwithstanding that tenant transferred property to assignee prior to sheriff's levy on property under writ of possession issued in landlord's distress proceedings.    (Comp. Gen. Laws 1927, Secs. 5598, 5420.)"

That the lien of *ad valorem* taxes is a first lien, superior to all other liens, is provided by our statute, Section 894, C. G. L.; see also 61 C. J. 925.   But we are not dealing here with ad valorem taxes.   We are dealing with an excise of privilege tax, the character of which is set forth in Sections 7 to 9, inclusive, of Chapter 16848, and, as we have seen, Section 12 of that Act expressly provides that upon the filing and docketing of the warrant, the same shall become a lien *in the same manner as a judgment duly docketed*, etc., but this lien, in the nature of a judgment lien, is made superior *only* "to mortgages or other liens filed or recorded subsequent" to the date of the filing and docketing of the warrant, thus preserving the priority of "mortgage or other liens" already filed and recorded."   Inasmuch as the statutory landlord's lien is not required to be filed and recorded, and attaches at the commencement of the tenancy (see Pillans & Smith, Inc., v. Lowe, *supra;* 16 R. C. L. 988; 36 C. J. 490) or as soon thereafter as the chattels are brought upon the premises, and is not dependent for its efficacy upon being "filed or recorded," we think it is reasonably clear that as to property of the tenant which was usually kept upon the leased premises and which was then on the premises, the filing and docketing of the Comptroller's warrant would not displace or destroy, or create a lien superior to, an existing landlord's lien on such property, for rent already accrued, or for rent accruing under the lease up to the time of the levy and sale of such property by the sheriff under such Comptroller's warrant.

Liens are not to be impaired by vague and uncertain implications. Kimball v. Jenkins, 11 Fla. 111. A landlord's lien, as to property usually kept on the premises, is not, under the statute, dependent upon the levy of a distress warrant, nor does its existence depend upon filing or recording, or the institution of any proceeding for its enforcement. And such lien has priority over judgment, execution or attachment liens subsequently acquired on the property, which are subject to the existing landlord's lien. 16 R. C. L. 988; Section 5420 C. G. L., par. 2.

If the legislative intent, as disclosed by the language of a taxing or tax enforcement statute, be doubtful, the rule in this jurisdiction is that such doubt should be resolved in favor of the rights of the citizen and against the State. *Ex parte* Sims, 40 Fla. 432, 25 So. 280; Heriot v. Pensacola, 108 Fla. 480, 146 So. 654.

It follows that the decree appealed from must be and is hereby reversed, and the said causes remanded to the trial court for further proceedings consistent with the foregoing opinion.

BUFORD, CHAPMAN and THOMAS, J. J., concur.

WHITFIELD, P. J., dissents.

TERRELL, C. J., not participating.