609 So.2d 1323 (1992)
William J. MATHIAS, et al., Appellants,
v.
WALLING ENTERPRISES, INC., Appellee.
No. 90-2204.
District Court of Appeal of Florida, Fifth District.
September 11, 1992.
On Motion for Rehearing and Certification December 31, 1992.
Fred A. Morrison, of McLin, Burnsed, Morrison, Johnson & Robuck, P.A., Leesburg, for appellants.
Gary J. Cooney, of Austin, Lawrence & Landis, Leesburg, for appellee.
EN BANC
DIAMANTIS, Judge.
Mathias, Chandler and Ohnstad (investor group), appeal from a summary judgment which adjudicated that Walling Enterprises, Inc.'s landlord's lien for rent had priority over their perfected security interest in Chobe Investments, Inc.'s liquor license issued for Snaps Lounge, as well as in other items of equipment and fixtures. We affirm in part and reverse in part.
The record shows that originally Chandler, Mathias, and Ohnstad (and others) *1324 owned all the stock in Chobe Investments, Inc. They borrowed money from Citizens National Bank of Leesburg to open Snaps Lounge in Leesburg. A purchase money security agreement covering assets, inventory and equipment was executed on July 17, 1986. A UCC-1 filing was made on July 21, 1986.
An additional note for $60,000 and a security agreement covering a 4-COP liquor license was executed in the bank's favor by Chobe on August 28, 1986. At that point, Chobe had a temporary license for Snap's Lounge, issued August 27, 1986. On October 17, 1986 Citizens National Bank, pursuant to section 561.65(4), Florida Statutes (1985), recorded with the Division of Alcoholic Beverages and Tobacco the security agreement which described the liquor license. The bank on September 9, 1986 also filed with the Secretary of State's office a UCC-1 financing statement covering the liquor license.
The Division issued the permanent license on February 3, 1987. On February 6, 1987 the bank again recorded with the Division the security agreement involving the liquor license.
Chobe and Walling entered into a lease for Snap's Lounge on May 30, 1986. According to the terms of the lease, it was to run for three years beginning when the lounge opened. It opened for business on September 4, 1986. Walling never attempted to file any document with either the Division or the Secretary of State.
In August of 1989 the investor group sold all of their stock in Chobe to the Bainters. Under the lease with Walling, this was deemed to be an assignment of the lease, to which Walling consented. When the new owners of Chobe began defaulting on their rent and bank loans, the investor group who had guaranteed the bank loans settled their obligations with the bank and took an assignment of the bank's security interests and filings. Thus, the investor group stepped into the bank's secured position.
The investor group then filed this lawsuit, seeking to enforce the bank's rights in the collateral and Walling intervened to assert its landlord's lien for rent. The trial court then adjudicated the relative priorities of Walling and the investor group.

I. Statutory Landlord's Lien Attaches to a Lessee's property Interest in a Liquor License.
Florida law has recognized that a landlord's statutory lien for rent under section 83.08(2)[1] can attach to a lessee's liquor license located on the leased premises. G.M.C.A. Corporation v. Noni, Inc., 227 So.2d 891 (Fla. 3d DCA 1969); Yarbrough v. Villeneuve, 160 So.2d 747 (Fla. 1st DCA 1964). In Yarbrough, the court held that a liquor license is subject to the attachment of a landlord's lien, and stated that while a beverage license is but the grant of a privilege and is not property in the constitutional sense, it has been recognized and considered to be property in a commercial sense, citing House v. Cotton, 52 So.2d 340 (Fla. 1951) and Kline v. State Beverage Department of Florida, 77 So.2d 872 (Fla. 1955). The court in Yarbrough reasoned that because the statute creating a landlord's lien for rent provides that such lien shall attach to all property of the lessee kept on the property, and because vendors must display their licenses in conspicuous places on their licensed premises, the statutory landlord's lien attached to the license. Yarbrough, 160 So.2d at 748.
*1325 We reject the argument that conceptually a liquor license does not have a "location" because it lacks substance and form and, therefore, it cannot be "brought onto" the leased premises. As in Yarbrough, a liquor license must be located in a conspicuous place in order for a business to lawfully open its doors to sell regulated alcoholic beverages.[2] This requirement prevents a licensee from exercising the privilege of selling alcoholic beverages at two or more locations, and persons involved in the commercial sale of alcoholic beverages know and understand this requirement. Because the commercial world is aware of the need and real value of the physical license to the licensee, the license itself has a possessory value even though it is a "general intangible." Consequently, the physical license, while it is located on the leased premises, can be subject to a statutory landlord's lien, which lien is in essence a possessory one.[3]
The advent of the Uniform Commercial Code (UCC) in 1967 did not affect the Yarbrough principle of the landlord's statutory lien as attaching to a liquor license.[4] A landlord's lien is expressly excluded from the provisions of the UCC. See § 679.104(2), Florida Statutes (1991). Thus, we agree with the trial court that a landlord can have a statutory lien which attaches to a liquor license located on the leased premises.

II. Walling's Statutory Lien Did Not Have to be Perfected Pursuant to Either Section 561.65(4) or Section 679.401(c).
Prior to the Florida Supreme Court's opinion in United States v. McGurn, 596 So.2d 1038 (Fla. 1992), applicable case law required dual filing under both sections 561.65(4) and section 679.401(1)(c) in order to perfect a security interest. See In re Seville Entertainment Complex of Pensacola, Inc., 79 B.R. 491, 493 (Bankr.N.D.Fla. 1987). See also In re Coed Shop, Inc., 435 F. Supp. 472 (N.D.Fla. 1977) affirmed, 567 F.2d 1367 (5th Cir.1978). In McGurn the Florida Supreme Court, in a certified question from the Eleventh Circuit, held that recording of a security interest with the Florida Division of Alcoholic Beverages and Tobacco pursuant to section 561.65(4) was sufficient under Florida law to perfect a security interest in a liquor license as against a subsequent judgment lien and that filing under section 679.401(1)(c) of the UCC was unnecessary.
Section 561.65(4)-(7) was enacted in 1981 by Chapter 81-158, section 21, Laws of Florida. This chapter also amended 561.65(1). Section 561.65(4)-(7) provides that: (1) a filing be made within ninety days of the date of creation of the security agreement or lien on appropriate forms to be filed with the Division; (2) any foreclosure shall be in the circuit court in the county in which the beverage license is issued; (3) the procedure for a foreclosure and sale and priority of payment; and (4) foreclosure or judicial transfer of the license does not prevent the Division from taking administrative action against the licensee, but a revocation shall only impair the qualifications of the licensee's officers, directors, or stockholders. Section 561.65(1) was amended to require notice by the Division to any lienholder who properly records *1326 its lien pursuant to subsection (4) of any pending revocation or suspension of a licensee's beverage license.
Section 561.65(4) provides in pertinent part:
561.65 Mortgagee's interest in license. 
* * * * * *
(4) In order to perfect a lien or security interest in a spirituous alcoholic beverage license which may be enforceable against the license, the party which holds the lien or security interest, within 90 days of the date of creation of the lien or security interest, shall record the same with the division on or with forms authorized by the division, which forms shall require the names of the parties and the terms of the obligation.
Historically, possessory liens such as a landlord's lien or a pledge did not have to be recorded in order to have priority over a subsequently acquired security interest or lien. See Lovett v. Lee, 141 Fla. 395, 193 So. 538 (1940); Spellman v. Beeman, 70 Fla. 575, 70 So. 589 (1915); United States v. S.K.A. Associates, Inc., 600 F.2d 513 (5th Cir.1979). The UCC recognizes this historic exception to the recording requirement. See e.g. §§ 679.104 and 679.305, Fla. Stat. (1991). Section 679.104 not only exempts a landlord's lien from the requirement of recording, but such section also exempts certain enumerated non-possessory liens from this requirement.
Chapter 81-158, section 21, Laws of Florida, does not suggest that the legislature intended to abrogate this historic distinction between possessory and non-possessory liens when it enacted section 561.65(4). The purpose of recording is to place subsequent lienors and holders of security interests on notice of the prior lien or security interest. Section 83.08(2) puts such subsequent lienors and holders of security interests on notice that a debtor's landlord has a lien upon the lessee's property superior to any lien acquired subsequent to the bringing of the property upon the leased premises. Failure to record a landlord's lien may very well abrogate the requirement of section 561.65(1) that the Division notify the lienholder of any pending revocation or suspension proceedings because notice from the Division is only required to lienholders who have recorded their liens pursuant to section 561.65(4).
The Florida Supreme Court's decision in McGurn does not affect the statutory landlord's lien. McGurn dealt exclusively with a landlord's contractual security interest upon a lessee's alcoholic beverage license. A contractual security interest is broader in scope than a statutory landlord's lien in that a contractual security interest not only encompasses the alcoholic beverage license while it is located on the leased premises, but such interest follows the license in the event it is transferred to another location. In order to have such a perfected contractual security interest, recording is essential. This would not be true of a possessory statutory landlord's lien which only attaches to the alcoholic beverage license during its presence upon the leased premises.[5] In other words, section 561.65(4) only changed the place of recording liens and security interests in liquor licenses which were required to be *1327 recorded in order to be perfected from the Secretary of State to the Division. Section 561.65(4) does not purport to affect possessory liens which did not require recording in order to be perfected. As we have pointed out, failure to record a statutory landlord's lien may result in loss of the right to receive notice from the Division under section 561.65(4) of any revocation or suspension proceedings.

III. The Investor Group's Security Interest is Superior to Walling's Statutory Landlord's Lien in the Liquor License.
The record reveals that the lease term began September 4, 1986, the day Snaps opened for business. Under the lease, Chobe's rent obligation began to accrue September 1, 1986. Thus, it was not until September 1, 1986 that there was a lease in effect which would give rise to a landlord's lien. On that date Chobe had the temporary license that is issued by the Division when an application for a beverage license is made. The permanent license was issued on February 3, 1987. Because the parties did not present any issue regarding whether the perfection of a security interest in a temporary license extends to the subsequently-issued permanent license, we express no opinion whether such double perfection is necessary. In the instant case, Citizens National Bank took separate action to perfect security interests in both the temporary and permanent licenses. On February 3, 1987 Citizens National Bank perfected a security interest in the permanent license by recording its security interest with the Division first on October 17, 1986 and then on February 6, 1987.[6] Consequently, when the lessee later brought the permanent license onto the leased premises in February of 1987, the bank's security interest had been perfected.
Where a third party has already perfected a security interest before the landlord's lien arises, the prior perfected security interest takes precedence over the landlord's lien. See Lovett v. Lee, supra; Ruge v. Webb Press Co., 71 Fla. 536, 71 So. 627 (1916); Flowers v. Centrust Savings Bank, 556 So.2d 1123 (Fla. 3d DCA 1989); Geiger Mutual Agency, Inc. v. Wright, 233 So.2d 444 (Fla. 4th DCA 1970); United States v. S.K.A. Associates, Inc., supra.
Thus, Citizens National Bank's security interest under which the investor group claims is entitled to priority over the statutory landlord's lien. See Baer v. General Motors Acceptance Corporation, 101 Fla. 913, 132 So. 817 (1931); Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915 (1920).

IV. Issues of Material Fact Concerning Furniture, Equipment and Fixtures.
Whether the statutory landlord's lien is superior to the investor group's security interest in the furniture, equipment and fixtures cannot be determined from this record for purposes of resolving this issue by summary judgment. A resolution of this question depends on whether Citizens National Bank perfected its security interest in such property before it was brought onto the leased premises, or, if such property was present there when the lease term commenced, whether such security interest was perfected at that time. Because these factual matters cannot be determined, we must remand this cause for further proceedings.

V. Conclusion.
Accordingly, we affirm the lower court's conclusions that Walling's statutory landlord's lien attached to the liquor license located upon the leased premises and that Walling did not have to perfect its possessory lien pursuant to the provisions of section 561.65(4). However, we reverse the trial court's holding that Walling's landlord's lien on the liquor license was superior to the investor group's perfected security interest in such license and we remand this cause to the trial court to enter a summary judgment in favor of the investor *1328 group on the issue of the priority of the parties' respective claims to the license. We also reverse the lower court's ruling that Walling's landlord's lien was superior to the investor group's security interest in the furniture, equipment and fixtures and remand for further proceedings to determine this issue of priority.
AFFIRMED in part; REVERSED in part; REMANDED.
GOSHORN, C.J., and DAUKSCH, COBB, PETERSON and GRIFFIN, JJ., concur.
W. SHARP, J., concurs specially, with opinion in which HARRIS, J., concurs.
COWART, J., concurs in conclusion only.
W. SHARP, Judge, concurring specially.
Mathias, Chandler and Ohnstad (investor group), appeal from a final summary judgment which adjudicated that Walling Enterprises, Inc.'s landlord's lien for rent had priority over their perfected security interest in Chobe Investments, Inc.'s liquor license issued for Snaps Lounge in the Palm Plaza Shopping Center, Leesburg, Florida, as well as other items of equipment and fixtures. While I agree that the investor group should prevail in this cause, I would reach that result by holding that a statutory landlord's lien for rent does not encompass a licensee's interest in a liquor license because it is a general intangible and not an item of tangible property. I would reverse.
This record shows that originally Chandler, Mathias, and Ohnstad (and others) owned all the stock in Chobe Investments, Inc. They made arrangements with the Citizens National Bank of Leesburg to borrow money to open Snaps Lounge in Leesburg. A purchase money security agreement covering assets, inventory and equipment was executed on July 17, 1986. A UCC-1 filing was made on July 21, 1986.
An additional note for $60,000 and a security agreement covering a 4-COP liquor license was executed in the bank's favor by Chobe on August 28, 1986. The bank perfected its interest by recording the security agreement with the Division of Alcoholic Beverages and Tobacco within ninety days of its execution pursuant to section 561.65(4) (on October 17, 1986 and on February 6, 1987), as well as by timely filing with the Department of State a UCC-1 filing statement pursuant to section 679.401(1)(c).[1] Dual filing was considered necessary under prevailing case law. In re Seville Entertainment Complex of Pensacola, Inc., 79 B.R. 491, 493 (Bankr.N.D.Fla. 1987) ("In light of the clear statutory mandate of F.S. § 561.65(4), this Court concludes that dual filing was required by Rosie's in order for it to properly perfect its security interest in the alcoholic beverage license").[2] However, the Florida Supreme Court recently held that the 1981 amendment to section 561.65(4) provides the exclusive means for perfecting a security interest in a liquor license. United States v. McGurn, 596 So.2d 1038 (Fla. 1992).
*1329 Chobe and Walling entered into a lease for Snap's Lounge on May 30, 1986. According to the terms of the lease, it was to run for three years beginning when the lounge opened. It opened for business on September 4, 1986.
At that point, Chobe had a temporary liquor license for Snap's Lounge, issued August 27, 1986. It expired November 24, 1986. The permanent license was issued by the Department on February 3, 1987. The Department acknowledged the bank's notice of lien was filed on February 6, 1987, as to that license, but the bank also filed a notice of lien form with the Division on October 17, 1986. Walling never attempted to file any document with either the Division or the Secretary of State, pursuant to the UCC.
In August of 1989, the investor group sold all of their stock in Chobe to the Bainters. Under the lease with Walling, this was deemed to be an assignment of the lease, to which Walling consented. When the new owners of Chobe began defaulting on their rent and bank loans, the investor group who had guaranteed the bank loans settled their obligations with the bank and took an assignment of the bank's security interests and filings. The investor group stepped into the Bank's security "shoes" for purposes of this case.
The investor group then filed this lawsuit, seeking to enforce the bank's rights as to its collateral. Walling moved to intervene to assert its landlord's lien for rent. Chobe filed for bankruptcy. After the bankruptcy trustee rejected the lease and lifted the stay as to the collateral involved in this case, this lawsuit proceeded to establish the relative priorities of Walling and the investor group.

I. Priority of Investor Group's Security Interest in Liquor License over Walling's Landlord's Lien.
Assuming (for the moment) that a landlord's lien for rent created by section 83.08(2) can automatically attach to a tenant's liquor license, two questions arise. First, did it "arise" in this case before the Bank perfected its security interest? And second, was the landlord (Walling) required to file notice of its lien with the Division pursuant to section 561.65(4) in order to become perfected?
Pursuant to section 83.08(2), in order for a landlord's lien to arise, first the lease term must have commenced and second, some property of the tenant's must be on the premises when the term begins, or it must be later brought on the premises by the tenant (and usually kept there).[3] If another party has already perfected a security interest in the tenant's property before the landlord's lien arises, the other prior-perfected security interest has priority over the landlord's lien. See U.S. v. S.K.A. Associates, Inc., 600 F.2d 513 (5th Cir.1979); Lovett v. Lee, 141 Fla. 395, 193 So. 538 (1940); Ruge v. Webb Press Co., 71 Fla. 536, 71 So. 627 (1916); Flowers v. Centrust Savings Bank, 556 So.2d 1123 (Fla. 3d DCA 1989); Geiger Mutual Agency, Inc. v. Wright, 233 So.2d 444 (Fla. 4th DCA 1970).
The record in this case shows that the lease term began September 4, 1986, the day Snaps opened for business. Under the lease, Chobe's rent obligation began to accrue September 1, 1986. Thus, at the earliest there was a lease in effect in this case which could cause a landlord's lien to arise on September 1, 1986. However, at that point, Chobe only had a temporary license.
The permanent license (the valuable one in dispute in this case) was not issued by *1330 the Division until February 3, 1987. But by that time the Bank had obtained a security interest in it, and had perfected its interest by filing with the Division on October 17, 1986 and February 6, 1987, as well as with the Secretary of State (UCC-filing) on September 9, 1986. The permanent license was thus "brought on the premises" by the tenant (carried in to Snaps and hung on its walls) in February of 1987, in an already perfected state. The bank's security interest is thus entitled to priority over the statutory landlord's lien. See Powell v. Lounel, Inc., 173 F.2d 743 (5th Cir.1949); Baer v. General Motors Acceptance Corp., 101 Fla. 913, 132 So. 817 (1931); Edwards v. Baldwin Piano Co., 79 Fla. 143, 83 So. 915 (1920).
However, even if the landlord's lien "arose" before the Bank perfected its security interest in the liquor license, since Walling did not file any notice with the Division, it was never perfected itself, and thus should lose to the Bank's later-perfected security interest. In 1981, the Florida Legislature added subsections (4), (5), and (6) to section 561.65 which specify the manner in which a lien or security interest in a beverage license must be perfected, the procedure for foreclosure, and the order of priority. Ch. 81-158, § 21, Laws of Fla. In United States v. McGurn, 596 So.2d 1038 (Fla. 1992), the Florida Supreme Court held that the sole and exclusive method to perfect a security interest in a liquor license in Florida is to file with the Division pursuant to section 561.65(4).
In McGurn, the McGurns leased certain real property and premises to the lessees. To secure their right to rent under the lease, the McGurns obtained a security agreement giving them a security interest in the lessee's liquor license. The McGurns filed with the Division within ninety days after execution of the security agreement in 1981, although they did not file a financing statement with the Secretary of State pursuant to section 679.401. Six years later the McGurns brought suit to foreclose their security interest in the liquor license. They named the United States as a defendant because the Internal Revenue Service had filed three different tax assessments from 1983 to 1987 and had seized the liquor license for the lessees' nonpayment of federal taxes.
Federal law provides that a federal tax lien is not valid against a holder of a "perfected" security interest. The McGurns contended their security interest became perfected by filing with the Division pursuant to section 561.65(4). The government contended, that as a result of sections 561.65(4) and 679.401, dual filing was required to perfect an interest in a liquor license under Florida law. The 11th Circuit certified to the Florida Supreme Court the question of whether the recording of a security interest with the Florida Division of Alcoholic Beverages and Tobacco pursuant to section 561.65(4) was sufficient under Florida law to perfect that interest against a subsequent judgment lien. The Florida Supreme Court answered this question in the affirmative and held that filing under the Uniform Commercial Code was unnecessary.
Implicit in that holding is the determination that a statutory landlord's lien, arising pursuant to section 83.08(2), must be perfected by appropriate filing with the Division to prevail over a subsequent perfected interest. This is because the facts in McGurn clearly show that the McGurns had a statutory landlord's lien in the liquor license, which pursuant to prior case law was automatically perfected, without the necessity of filing.[4] The issue of when the McGurns had to file to perfect their security interest in the liquor license would have been irrelevant and would not have required certification to and decision by the Florida Supreme Court if the statutory landlord's lien did not have to be perfected. In the instant case, the record clearly shows that the investor group held a perfected security interest, but that Walling never perfected its lien by the appropriate filing. Thus, the investor group's perfected *1331 interest has priority over the unperfected statutory landlord's lien.

II. A Statutory Landlord's Lien Under Section 83.08(2) Does Not Attach to a Lessee's Property Interest in General Intangibles (i.e., a Liquor License).
On a more basic level, I would conclude that the trial court's judgment must be reversed because I respectfully disagree with Yarbrough that the statutory lien provided for landlords in section 83.08(2) automatically reaches and attaches to that bundle of rights created by the issuance of a license to sell alcoholic beverages at a certain location. Yarbrough was decided before Florida adopted its version of the UCC, effective January 1, 1967. If that court had considered the nature of a lessee's property rights in a beverage license, the definitions and categorization of various kinds of personal property by the UCC, and the language used by section 83.08(2), I do not think it would have reached the same conclusion.
Older Florida cases hold that a license or permit constitutes a special privilege, rather than a property right. See generally, 53 C.J.S. Licenses § 2 (1987); 2 Fla.Jur.2d, Alcoholic Beverages, § 17 (1977). In State ex rel. First Presbyterian Church v. Fuller, 136 Fla. 788, 187 So. 148 (1939), the Florida Supreme Court said a liquor license "is not property in a constitutional sense, nor is it a contract. Inasmuch as `it confers no right or estate or vested interest it would seem to follow that it is revocable at the pleasure of the authority from which it emanates.'" Id. 187 So. at 150.
However, the court recognized that certain aspects of a state liquor license give it "the quality of property."[5] It enforced a contract to assign a liquor license to a landlord at the end of the lease term in House v. Cotton, 52 So.2d 340 (Fla. 1951). The court said:
Even though a liquor license may have the character of a mere privilege insofar as government regulation of the alcoholic beverage industry is concerned, it must be recognized that in this state, as well as in many states due to the limitations respecting the number and location of liquor establishments and the condition under which the license is issued, a liquor license has come to have the quality of property, with an actual pecuniary value far in excess of the license fees exacted by the state, county, and city... . Our statute expressly recognizes the transferability of a liquor license. (emphasis added)
Id. at 341. Thus, in Florida, chattel mortgagees and attaching judgment creditors may reach a person's interest in a license to sell alcoholic beverages. See Coney v. First State Bank of Miami, 405 So.2d 257 (Fla. 3d DCA 1981); Hubbard v. Jebb, 163 So.2d 307 (Fla. 2d DCA), cert. denied, 168 So.2d 149 (Fla. 1964). This is consistent with the law in other states whose statutes expressly allow for transfers of and liens on liquor licenses, as does Florida's.[6]
With the advent of the UCC, no major changes occurred, except to rename a creditor's interest in a liquor license as a "security interest"[7]and to require central filing in order to perfect a security interest. Annotation, Security Interests in Liquor Licenses, 56 A.L.R. 4th 1131 (1987). Under the UCC, a liquor license fell into the category of "general intangibles." In re Coed Shop, Inc., 435 F. Supp. 472 (N.D.Fla. 1977), affirmed, 567 F.2d 1367 (5th Cir.1979); 47 Fla.Jur.2d, Secured Transactions, § 109 (1984). Pursuant to section 679.106, general intangible "means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money."
*1332 As a general intangible, a liquor license is classified as a form of "incorporeal" property. Contrasted with corporeal or tangible property, it cannot be seen or handled. It has no substance or body, and no location. It is essentially a bundle of rights such as those inherent in a franchise, a chose in action, a copyright or an annuity. 73 C.J.S. Property § 15 (1983). Logically, it cannot be brought onto the premises leased[8] any more than an account (account receivable) can be said to be located at a creditor's office because the accounting books (or computer) evidencing the debt are located there. In McGurn, the Florida Supreme Court further recognized this distinction stating "we emphasize that a liquor license is not like other `general intangibles' because it is issued as a matter of privilege, not as a matter of right, by the government, and the government has total control of its use." McGurn, 596 So.2d at 1041.
The problem with the analysis in Yarbrough, later followed in G.M.C.A. Corporation v. Noni, Inc., 227 So.2d 891 (Fla. 3d DCA 1969), is that the court assumed that a liquor license is like a chattel, which can be brought onto the premises. That is due to the court's failure to recognize that a general intangible, such as a license, has no location or form or substance in the sense that it can be said to be in any one place, and its mistaking the certificate, which evidences issuance of the license, as the same thing as the license itself.
In Yarbrough, the court seized upon the fact that the state beverage law requires all vendors to keep their "license" displayed at their place of business. However, "license" in its primary sense means a "right or permission granted by some competent authority to carry on a business or do an act which, without such license, would be illegal." 53 C.J.S. Licenses § 2 (1987). In a secondary sense "license" is sometimes used to mean the written document or that which evidences the granting of the right or permission.[9] But, it is "license" in its primary sense which gives a beverage license its property value as a general intangible. Seizing the paper certificate itself avails the seizer of no rights or privileges.
Thus, I conclude that the landlord's lien provided for in section 83.08(2) was never intended to attach to incorporeal or intangible property rights such as accounts or general intangibles. By its own express and limiting language, it applies only to property which is tangible, has substance and form and can be said to have a "location." See Orr v. Peek, 142 Fla. 160, 194 So. 341 (1940) (defining the "usually kept" phrase of section 83.08(2) as meaning "property regularly and habitually if not continuously kept on the premises ..."). Because it lacks those characteristics of tangible property, intangible property cannot be "brought onto" leased premises, much less be regularly and habitually "kept there."
Consistent with the Florida Supreme Court's ruling in McGurn, I would hold that a beverage license is a special type of general intangible. Although it may pertain to a specific location, it is not located there, and it is much more than the paper certificate evidencing its issuance. Thus, the statutory landlord's lien for which section 83.08(2) provides does not attach to a license to sell alcoholic beverages merely because a tenant places a license certificate on the wall of a tavern while the premises are being leased.
It follows that Walling has no claim to the liquor license at issue in this case, and the investor group (as assignees of the bank) have an enforceable security interest in the license.
Whether Walling's landlord lien is superior to the bank's security interest in the equipment, fixtures and chattels cannot be determined from this record. The answer to that question turns on whether or not the bank had perfected its security interest *1333 in such tangible property before it was brought onto the premises then leased by Chobe, or (if present there when the lease term began) whether it was so perfected at that time (September 1, 1986).

ON MOTION FOR REHEARING AND CERTIFICATION
PER CURIAM.
We deny appellee's motion for rehearing, but we grant its motion to certify this case as one which passes on questions of great public importance:[1]
I. DOES A STATUTORY LANDLORD'S LIEN PURSUANT TO SECTION 83.08(2) POTENTIALLY REACH AND ENCOMPASS A TENANT'S LIQUOR LICENSE?
II. IN ORDER TO "PERFECT" A STATUTORY LANDLORD'S LIEN IN A LIQUOR LICENSE, MUST A LANDLORD FILE WITH THE DIVISION PURSUANT TO SECTION 561.64(4); AND TO HAVE PRIORITY OVER A COMPETING CREDITOR WHO HAS FILED, MUST THE LANDLORD HAVE FILED FIRST?
GOSHORN, C.J., and DAUKSCH, W. SHARP, HARRIS, PETERSON and GRIFFIN, JJ., concur.
COBB, COWART and DIAMANTIS, JJ., dissent, without opinion.
NOTES
[1] Section 83.08(2) states:

83.08 Landlord's lien for rent.  Every person to whom rent may be due, his heirs, executors, administrators or assigns, shall have a lien for such rent upon the property found upon or off the premises leased or rented, and in the possession of any person, as follows:
* * * * * *
(2) Upon all other property of the lessee or his sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of the property on the premises leased.
* * * * * *
[2] § 561.23(2), Fla. Stat. (1985). In the commercial world, the statutory requirement of conspicuous placement has come to mean "on the wall" of the business.
[3] There is a peculiar propriety in a landlord having a possessory lien on a liquor license. While regulatory permission to move a liquor license with its attendant right of use to another location may sometimes be obtained, the license, in the instant case, can only be used on the leased premises. Thus, when the lessee defaults in payment of its rent and the security of the license is needed to cover such default, the lien interest can be judicially converted to a title interest. At that time the landlord, being the owner of the permitted premises, is in the unique position to apply to use it at that location or to transfer its title interest to a new tenant who may gain such permission. See § 561.32, Fla. Stat. (1985).
[4] We note that in G.M.C.A. Corporation v. Noni, Inc., 227 So.2d 891 (Fla. 3d DCA 1969) the tenancy commenced on January 2, 1968 which was after the January 1, 1967 effective date of the Uniform Commercial Code. In G.M.C.A., the court followed Yarbrough v. Villeneuve, 160 So.2d 747 (Fla. 1st DCA 1964).
[5] In United States v. McGurn, 596 So.2d 1038 (Fla. 1992), the Florida Supreme Court pointed out that it was dealing with the issue of perfecting a security interest in a liquor license when it stated:

We note it is not in dispute that, in order to perfect a security interest in a liquor license, that interest must be recorded in the Division of Alcoholic Beverages in accordance with the provisions of section 561.65(4), Florida Statutes (1987). The issue in this case is whether a filing is also required under the Uniform Commercial Code, specifically, section 679.401, Florida Statutes (1987). (Emphasis in original.)
Id., at 1040.
This statement of the Florida Supreme Court comports with the certified question from the Eleventh Circuit:
WHETHER THE RECORDING OF A SECURITY INTEREST WITH THE FLORIDA DIVISION OF ALCOHOLIC BEVERAGES AND TOBACCO PURSUANT TO SECTION 561.65, FLA. STAT., IS SUFFICIENT UNDER FLORIDA LAW TO PERFECT THAT INTEREST AGAINST A SUBSEQUENT JUDGMENT LIEN.
Id., at 1038.
[6] The filings of October 17, 1986 and February 6, 1987 with the Division of Alcoholic Beverages and Tobacco refer to "license # 45-00054 4-COP" which is the alcoholic beverage license involved in the instant case.
[1] The UCC-1 filing was made September 9, 1986, sufficient pursuant to sections 679.301(2) and 679.312(4) to give the Bank's security interest in the license a purchase money status and a perfection date of August 28, 1986, under the fifteen-day rule.

Affidavits in the record by the individuals who were then operating Chobe (Chandler, Ohnstad & Mathias) establish this loan was for the purpose of purchasing a liquor license for the lounge. Another affidavit filed by the bank officer (Hall) also establish this loan was for the purpose of acquiring the liquor license. There are no counter-affidavits in the record which challenge the bank's purchase money status.
The only counter-proof filed by Walling in opposition to the investor group's summary judgment motion is a copy of Chobe Investments, Inc's application for a beverage license, filed with the department on August 26, 1986 (stamped received August 27, 1986). The document states that no one then held a security agreement or mortgage for the lounge business. Since the bank's security agreement covering the beverage license was not executed until August 28, 1986 and the UCC filing was made September 9, 1986, that statement was correct at the time. The notice of lien document filed with the Division (stamped October 17, 1986), disclosing the bank's security interest in the liquor license took effect on August 28, 1986.
[2] See also In re Coed Shop, 435 F. Supp. 472 (N.D.Fla. 1977), affirmed, 567 F.2d 1367 (5th Cir.1978).
[3] Section 83.08(2), Florida Statutes (1985) provides:

Every person to whom rent may be due shall have a lien for such rent upon the property found upon or off the premises leased or rented, and in the possession of any person, as follows.
* * * * * *
(2) Upon all other property of the lessee or his sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of the property on the premises leased.
[4] United States v. S.K.A. Associates, Inc., 600 F.2d 513 (5th Cir.1979); Lovett v. Lee, 141 Fla. 395, 193 So. 538 (1940).
[5] Kline v. State Beverage Department of Florida, 77 So.2d 872 (Fla. 1955) (license owner entitled to due process when the state seeks revocation of license, i.e., notice and an opportunity to be heard together with a statement of reasons for revocation).
[6] See Annotation, Liquor License Subject to Execution or Attachment, 40 A.L.R.4th 927 (1985).
[7] Annotation, Construction and Effect of UCC Art. 9, Dealing with Secured Transactions, Sales of Accounts, Contract Rights, and Chattel Paper, 30 A.L.R.3d 9 (1970).
[8] § 83.08(2), Fla. Stat. (1985).
[9] 53 C.J.S. Licenses § 2 (1987); Black's Law Dictionary 829 (5th ed. 1979); State ex rel. Peterson v. Martin, 180 Or. 459, 474, 176 P.2d 636, 643 (1947) (the term "license" refers to the right or privilege conferred and the "certificate of license" is merely the written document which evidences such a right).
[1] Fla.R.App.P. 9.030(a)(2)(A)(v).