636 So.2d 1294 (1994)
WALLING ENTERPRISES, INC., Petitioner,
v.
William J. MATHIAS, et al., Respondents.
No. 81126.
Supreme Court of Florida.
March 31, 1994.
Rehearing Denied May 31, 1994.
*1295 Robert E. Austin, Jr. of Austin & Pepperman, Leesburg, for petitioner.
Fred A. Morrison of McLin, Burnsed, Morrison, Johnson & Robuck, P.A., Leesburg, for respondents.
HARDING, Justice.
We review Mathias v. Walling Enterprises, Inc., 609 So.2d 1323, 1333 (Fla. 5th DCA 1992), in which the Fifth District Court of Appeal certified two questions of great public importance:
I. DOES A STATUTORY LANDLORD'S LIEN PURSUANT TO SECTION 83.08(2) POTENTIALLY REACH AND ENCOMPASS A TENANT'S LIQUOR LICENSE?
II. IN ORDER TO "PERFECT" A STATUTORY LANDLORD'S LIEN IN A LIQUOR LICENSE, MUST A LANDLORD FILE WITH THE DIVISION PURSUANT TO SECTION 561.65(4); AND TO HAVE PRIORITY OVER A COMPETING CREDITOR WHO HAS FILED, MUST THE LANDLORD HAVE FILED FIRST?
We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. We answer the first certified question in the negative because we find that a licensee's interest in a liquor license is a general intangible and not an item of tangible property which is subject to a statutory landlord's lien for rent. Based upon our answer to the first certified question, we need not reach the second question.
Walter J. Mathias, Robert L. Chandler, David W. Ohnstad, and other individuals (investor group) originally owned all of the stock of Chobe Investments, Inc. (Chobe). Chobe made arrangements with the Citizens National Bank of Leesburg (Bank) to borrow money to open Snaps Lounge in Leesburg. A purchase money security agreement covering assets, inventory, and equipment was executed on July 17, 1986. A UCC-1 filing was made on July 21, 1986. Chobe executed an additional note for $60,000 and a security agreement covering a liquor license in the Bank's favor on August 28, 1986. At that point, Chobe had a temporary liquor license, issued on August 27, 1986. On September 19, 1986, the Bank recorded the security interest with the Division of Alcoholic Beverages and Tobacco (Division), as provided by section 561.65(4), Florida Statutes (1985).[1] However, the filing fee was not paid until October 17, 1986. On September 9, 1986, the Bank also filed a UCC-1 financing statement covering the liquor license with the Secretary of State's office.[2] After the permanent liquor license was issued on February 3, 1987, the Bank again recorded the security agreement with the Division on February 6, 1987.
*1296 On May 30, 1986, Chobe and Walling Enterprises Inc. (Walling) entered into a lease for Snap's Lounge. The lease provided that it would run for three years, commencing "at such time as Lessee opens its business on the premises" and that payment of rent would commence on September 1, 1986, whether or not the business was opened by that date. The lounge opened on September 4, 1986. Walling never attempted to file any document with the Division or the Secretary of State's office.
The investor group sold all of the stock in Chobe to Jon and Susan Bainter (Bainters) in August 1989. This was deemed an assignment of the lease, and Walling consented to the assignment. When the Bainters defaulted on their rent and bank loans, the investor group settled their obligations with the Bank and took assignment of the Bank's security interests and filings. The investor group then filed suit to enforce the Bank's rights in the collateral. Walling intervened to assert a statutory landlord's lien for rent[3] upon all of Chobe's property, including the liquor license.
The trial court concluded that Walling's landlord's lien attached to the liquor license located on the leased premises and that Walling did not have to perfect the possessory lien pursuant to section 561.65(4). The trial court also concluded that Walling's landlord's lien on the liquor license was superior to the investor group's security interest in the license.
On appeal, the district court affirmed the trial court's conclusion that a landlord can have a statutory lien which attaches to a liquor license located on the leased premises. 609 So.2d at 1325. The court further concluded that this possessory lien need not be perfected pursuant to section 561.65(4). Id. at 1326. However, as to the priority of the parties' claims to the license, the district court determined that the Bank's security interest, under which the investor group claims, was already perfected when the permanent license was brought onto the leased premises in February 1987. Id. at 1327. Accordingly, the district court reversed and remanded with instructions that the trial court enter a summary judgment in favor of the investor group. The district court also reversed the trial court's ruling that Walling's landlord lien was superior to the investor group's security interest in the furniture, equipment, and fixtures, and remanded for further proceedings to determine the issue of priority. Id. at 1327-28. The district court denied Walling's motion for rehearing, but granted a motion for certification of the questions to this Court. Id. at 1333.
The answer to the first certified question hinges upon the nature of a liquor license, which has been the subject of litigation in Florida for many years. In the opinion below, the district court relied upon G.M.C.A. Corp. v. Noni, Inc., 227 So.2d 891 (Fla. 3d DCA 1969), and Yarbrough v. Villeneuve, 160 So.2d 747 (Fla. 1st DCA 1964), for the proposition that a liquor license is subject to a landlord's statutory lien for rent. Relying upon the reasoning in Yarbrough, the district court explained that the statute creating a landlord's lien for rent provides that the lien shall attach to all property of the lessee kept on the landlord's property, and because vendors must display their liquor licenses in conspicuous places on their leased premises, the statutory landlord's lien attached to the license. 609 So.2d at 1324.
However, we find that the district court's conclusion is based upon a misperception of the nature of a liquor license. As Judge Sharp explained in her concurring opinion below, "[o]lder Florida cases hold that a license or permit constitutes a special privilege, rather than a property right." Id. at 1331 (Sharp, J., concurring specially). This Court has specifically determined that a liquor *1297 license "is not property in a constitutional sense." State ex rel. First Presbyterian Church v. Fuller, 136 Fla. 788, 795, 187 So. 148, 150 (1939). We have also recognized that certain aspects of a liquor license give it "the quality of property." House v. Cotton, 52 So.2d 340, 341 (Fla. 1951) (finding that a covenant to re-assign a liquor license could be specifically enforced); accord Kline v. State Beverage Dep't, 77 So.2d 872 (Fla. 1955) (holding that holder of liquor license is entitled to notice and opportunity to be heard before revocation of license). Florida Statutes recognize the right to transfer a liquor license under certain circumstances, as well as the right to hold a mortgage, lien, or security interest in the license. §§ 561.32, 561.65, Fla. Stat. (1985).
However, possessing a "quality of property" and being subject to transfer or creditors' claims does not make a liquor license property for purposes of a landlord's possessory lien pursuant to section 83.08(2). A liquor license is a "general intangible." United States v. McGurn, 596 So.2d 1038, 1041 (Fla. 1992); In re Coed Shop, Inc., 435 F. Supp. 472, 473 (N.D.Fla. 1977), aff'd, 567 F.2d 1367 (5th Cir.1978); see also 47 Fla.Jur.2d Secured Transactions § 109 (1984). In contrast to tangible property, a general intangible such as a liquor license "has no location or form or substance in the sense that it can be said to be in any one place." 609 So.2d at 1332 (Sharp, J., concurring specially).
The district court erroneously assumed that a certificate of license displayed on a vendor's premises is actually the liquor license. Id. at 1325. A liquor license is much more than the paper certificate that evidences issuance of the license. The license is the privilege to sell alcoholic beverages which has been conferred on the holder by the state. Although the liquor license pertains to a specific location, it is only the certificate of license and not the license itself that is physically located on the premises. Thus, a landlord's statutory lien for rent cannot attach to the license because it is not "property of the lessee ... usually kept on the premises." § 83.08(2), Fla. Stat. (1985).
Based upon this reasoning, we answer the first certified question in the negative and do not reach the second question. Although we agree with the result reached by the district court below, namely that the investor group has an enforceable security interest in the license, we do not agree with the reasoning underlying that conclusion. We find that Walling has no claim to the liquor license because his statutory landlord's lien for rent did not attach to the license. We agree with the district court that the priority of interests in the furniture, equipment, and fixtures cannot be determined from this record, and requires remand for further proceedings.
Accordingly, we approve the result reached below and remand for proceedings consistent with this opinion. We also disapprove G.M.C.A. and Yarbrough to the extent that they are inconsistent with this opinion.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[1] Section 561.65(4), Florida Statutes (1985), provides the method for perfecting a lien or security interest in an alcoholic beverage license. The party which holds the lien or security interest must record it with the Division within 90 days of its creation.
[2] In United States v. McGurn, 596 So.2d 1038 (Fla. 1992), this Court held that the filing with the Division under section 561.65(4) is sufficient to perfect a security interest in a liquor license and that a duplicate filing with the Secretary of State under the provisions of the Uniform Commercial Code was unnecessary.
[3] Section 83.08, Florida Statutes (1985), provides in pertinent part:

Every person to whom rent may be due, his heirs, executors, administrators or assigns, shall have a lien for such rent upon the property found upon or off the premises leased or rented, and in the possession of any person, as follows:
... .
(2) Upon all other property of the lessee or his sublessee or assigns, usually kept on the premises. This lien shall be superior to any lien acquired subsequent to the bringing of the property on the premises leased.